UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JASON CAMPBELL, et al.,

      Plaintiffs,

   v.

PRICEWATERHOUSECOOPERS,

      Defendant.

NO. CIV. S-06-2376 LKK/GGH

_____/

SAMUEL BRANDON KRESS, et al.,

      Plaintiffs,

   v.

PRICEWATERHOUSECOOPERS,

      Defendant.

NO. CIV. S-08-965 LKK/GGH

_____/

LAC ANH LE,

      Plaintiff,

   v.

PRICEWATERHOUSECOOPERS,

      Defendant.

NO. CIV S-08-997 LKK/EFB

O R D E R

_____/

////

1

1     Pending before the court is defendant PricewaterhouseCoopers

2  LLP's (PwC's) motion to consolidate in <u>Campbell v.</u>

3  <u>PricewaterhouseCoopers</u>, 06-2376, <u>Le v. PricewaterhouseCoopers</u>, 08-

4  997, and <u>Kress v. PricewaterhouseCoopers</u>, 08-965, as well as two

5  motions to strike and/or dismiss in <u>Le</u> and <u>Kress</u>.  <u>Campbell</u> is a

6  class action against PwC for unpaid overtime, meal and rest break

7  violations, wage statement claims, and waiting time penalties.

8  After the court certified a class of individuals who worked as

9  unlicensed associates in PwC's Attest division, two other putative

10  class actions (<u>Le</u> and <u>Kress</u>) alleging similar overtime claims were

11  transferred to this district.  PwC has now filed a motion to

12  consolidate all three actions as well as two motions to strike

13  and/or dismiss in <u>Le</u> and <u>Kress</u>, arguing that those class actions

14  are collaterally estopped by virtue of the <u>Campbell</u> certification

15  order.  The court resolve the matters on the parties' papers and

16  after oral argument.  For the reasons explained below, the motion

17  to consolidate and the motions to strike and/or dismiss are granted

18  in part and denied in part.

19                   **I. Background**

20  **A. <u>Campbell</u> Certification**

21     On March 25, 2008, the court granted in part the <u>Campbell</u>

22  plaintiffs' motion for class certification, certifying a class of

23  individuals who worked as unlicensed associates in PwC's Attest

24  division at any time from October 27, 2002 to the present and were

25  classified as exempt employees.  <u>Campbell v.</u>

26  <u>PricewaterhouseCoopers, LLP</u>, No. CIV. S-06-2376 LKK/GGH, 2008 WL

818617 (E.D. Cal. Mar. 25, 2008).  As the court noted, PwC is divided into three lines of service: Assurance, Tax, and Advisory. Plaintiffs had initially sought to certify a class that would encompass two of these lines of service, Assurance and Tax.  In addition, plaintiffs sought to certify a class that would include employees with the titles of both associate and senior associate.

The court declined to certify a class outside the Attest division of the Assurance line of service (which, in short, conducts audits).  Based on the record submitted, the court found that there were "significant differences in the work performed between divisions and between lines of service." <u>Campbell</u>, 2008 WL 818617, at *3.  The court noted that plaintiffs had submitted virtually no evidence of the job duties performed by employees outside their own division,[1] whereas defendant's evidence indicated that job duties varied across division and line of service.  In addition, defendant's evidence also indicated that job duties varied between associates and senior associates.

Because of these differences in job duties, the court found that plaintiffs had failed to show that a common question of law or fact predominated under Federal Rule of Civil Procedure 23(b)(3).  The court also noted that this issue could possibly be viewed as a problem with respect to typicality (i.e., the

---

[1] The court added the caveat that while plaintiffs need not possess personal information regarding the duties performed by these other employees, the plaintiffs' own declarations and depositions were the only sources of information they submitted on this issue.  <u>Campbell</u>, 2008 WL 818617, at *17, n.21.

1   requirement under Rule 23(a)(3) that "the claims or defenses of the

2   representative parties are typical of the claims or defenses of the

3   class"), given that plaintiffs Campbell and Sobek occupied the

4   position of Attest associates at PwC.   Nevertheless, the court

5   noted that "this issue might be better framed as a problem of

6   predominance," rather than typicality.   Campbell, 2008 WL 818617,

7   at *8.

8   **B. Le and Kress**

9       After the court's certification order, two other putative

10  class actions filed against PwC, Le and Kress, were transferred to

11  this district and ultimately assigned to this court.   The putative

12  classes in Le and Kress are similar but not identical to the class

13  certified in Campbell.

14      The scope of the proposed Kress class is similar to that here.

15  Kress Compl. ¶ 20 (defining class as "All persons employed by

16  Defendants in the State of California as salaried exempt employees

17  to do accounting work at any time within four years of the filing

18  [of] this complaint to the present but who were not licensed or

19  certified by the State of California in the Practice of accounting

20  and were not paid overtime").   Unlike Campbell, however, Kress does

21  not include a claim for rest period violations.

22      The scope of the proposed Le class is broader than the class

23  in Campbell, because in addition to seeking certification of a

24  class of unlicensed California associates under California law, Le

25  also seeks certification of a nationwide class of unlicensed

26  associates under the Fair Labor Standards Act (FLSA).   Le Compl.

4

1 ¶ 43.  In addition, whereas the plaintiffs in <u>Campbell</u> only sought

2 to certify a class including employees in the Assurance and Tax

3 lines of service, the class definitions in <u>Kress</u> and <u>Le</u> contain no

4 similar limitation (and thus might presumably encompass the

5 Advisory line of service).

6 PwC has now filed a motion to consolidate all three actions,

7 premised, at least in part, on the assumption that <u>Kress</u> and <u>Le</u>

8 would pursue certification of at least the same class already

9 certified in <u>Campbell</u>.  In their opposition to the motion to

10 consolidate, however, it is clear that all parties agree that those

11 portions of <u>Kress</u> and <u>Le</u> that overlap with the certified class in

12 <u>Campbell</u> should be stayed.  In addition, the plaintiffs in <u>Kress</u>

13 and <u>Le</u> agree that consolidation between their two cases would be

14 appropriate, and have indicated that they plan to file a single

15 consolidated amended complaint, although they oppose consolidation

16 with <u>Campbell</u>.

17 PwC has also filed separate motions to strike and/or dismiss

18 in <u>Kress</u> and <u>Le</u>.  Among other things, PwC argues that collateral

19 estoppel bars the relitigation of the class that the <u>Campbell</u>

20 plaintiffs attempted to certify (i.e., all associate and senior

21 associates within the Assurance and Tax lines of service).  In

22 addition, PwC argues in <u>Le</u> that plaintiff may not use violations

23 of the FLSA as a basis for her UCL claims.

24 **II. Motion to Consolidate**

25 **A. Standard**

26 Federal Rule of Civil Procedure 42(a) provides that "if

actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." The decision to grant or deny consolidation is within the discretion of the district court. _Investors Research Co. v. United States Dist. Court for Central Dist. of California_, 877 F.2d 777, 777 (9th Cir. 1989); _In Re Adams Apple, Inc._, 829 F.2d 1484, 1487 (9th Cir. 1987) ("consolidation is within the broad discretion of the district court"). One of the purposes of consolidation is to avoid unnecessary costs or delay that would result from proceeding separately with actions involving common issues of law or fact. _See, e.g._, _Equal Employment Opportunity Commission v. HBE Corp._, 135 F.3d 543, 550-51 (8th Cir. 1998) (finding consolidation appropriate because it would "avoid the inefficiency of separate trials involving related parties, witnesses and evidence").

To determine whether to consolidate, the court "weighs the interest of judicial convenience against the potential for delay, confusion and prejudice." _Sw. Marine, Inc. v. Triple A Machine Shop, Inc._, 720 F. Supp. 805, 807 (N.D. Cal. 1989). Considerations of convenience and economy must yield to a paramount concern for a fair and impartial trial. _Johnson v. Celotex Corp._, 899 F.2d 1281, 1484 (2d Cir. 1990), _cert. denied_ 498 U.S. 920 (1990). Factors to be weighed include the risk of prejudice and confusion; risk of inconsistent adjudications of common factual and legal issues; burden on parties, witnesses, and available judicial resources; delay; and expense. _Id._

///

**B. Analysis**

PwC argues that because all three actions involve common questions of law and fact, (1) consolidation will improve economy for both the court and the parties, (2) consolidation will minimize the risk of inconsistent judgments, and (3) consolidation will not cause any undue delay, confusion, or prejudice. In particular, PwC argues that discovery should be consolidated among all three actions, and the trial of the state law claims should be consolidated. As discussed below, while the court has reservations as to consolidating <u>Campbell</u> and <u>Le</u>/<u>Kress</u>, this determination should be made at a later stage, after a motion for class certification in <u>Le/Kress</u> has been resolved.

**1. Economy**

With respect to the first reason advanced for consolidation, PwC argues that a consolidated trial over the state law claims would be more economical, because there is "substantial overlap" between the <u>Kress</u> and <u>Le</u> putative classes and the original class sought to be certified in <u>Campbell</u>, as well as the claims at issue in all three actions. Indeed, PwC characterizes the putative classes in <u>Kress</u> and <u>Le</u> as "closely-related" to the class certified in <u>Campbell</u>. To argue, as PwC now does, that it would effect a savings of judicial economy to consolidate a trial spanning multiple lines of service (i.e., Assurance, Tax, and possibly Advisory), multiple divisions within each line of service (e.g., Attest, Systems Process Assurance, and Transactional Service, within Assurance), and job levels (i.e., associate and senior

associate) is wholly at odds with what PwC previously represented to the court in the Campbell certification proceedings. There, PwC argued that there were significant differences in the work performed between divisions and between lines of service, class certification would be inappropriate, as the trial would essentially degenerate into several mini-trials. PwC cannot have it both ways.

In addition, all parties appear to be in agreement that consolidated discovery would be appropriate, which can occur without a consolidation of the cases themselves. Duplicative discovery can be avoided by permitting discovery in each related action to be used in all related actions.[2] With respect to motion practice, the parties may (and should) coordinate hearing dates when appropriate, so that motions may be heard on the same day. Accordingly, many of the efficiency gains sought to be achieved by consolidation can also be achieved without consolidation.

### 2. Inconsistent Judgments

PwC also argues that there will be a risk of inconsistent results absent consolidation. Again, however, if it is true, as PwC previously represented to the court, that there are in fact different job duties performed by Attest associates (the class certified in Campbell) and by other non-Attest employees or by Attest senior associates (the class sought to be certified in Kress

---

[2] At the status conference held on August 11, 2008, the parties agreed to share discovery across cases so long as a stipulated protective order, like that in place in Campbell, is entered in Le/Kress.

8

1 and <u>Le</u>), then it is entirely possible that there would be different

2 results reached on the merits.  But there would be nothing

3 necessarily inconsistent with those judgments, because they would

4 be decided on the basis of different records.[3]

5     **3. Delay, Confusion, or Prejudice**

6     Finally, PwC argues that consolidation would not cause any

7 undue delay, confusion, or prejudice.  It is clear that

8 consolidation of the trial dates in all three cases would

9 significantly delay the trial date already set in <u>Campbell</u>

10 (currently scheduled for March 3, 2009), given that <u>Kress</u> and <u>Le</u>

11 are at an earlier stage of preparedness.  In order for those latter

12 cases to "catch up," there would likely first be pleadings motions,

13 pre-certification discovery, class certification proceedings,

14 possible Rule 23(f) petitions for appeal, notice proceedings, and

15 actual class notice.  This delay would prejudice the plaintiffs in

16 <u>Campbell</u>.[4]  Particularly where the savings to judicial economy are

17

18 [3] PwC also argues that -- in addition to inconsistent results on the merits -- there would be a risk of inconsistent results as to class certification, because the plaintiffs in <u>Le</u> and <u>Kress</u> seek

19 to achieve what the <u>Campbell</u> plaintiffs did not: certification of a class of non-Attest employees and Attest senior associates.

20 Assuming for the moment that collateral estoppel does not apply, that risk would be present regardless of whether the court grants

21 consolidation.  (PwC could not, for example, achieve through the backdoor of the law of the case doctrine what it could not achieve

22 directly through collateral estoppel.)  In addition, if collateral estoppel did not apply, the plaintiffs would seek certification on

23 an entirely different record than the one before the court in <u>Campbell</u>.  Accordingly, the judgments would not necessarily be

24 inconsistent.

25     [4] That said, the court also recognizes that in many instances, consolidation is appropriate even where cases are at different

26 stages of litigation, unless a case is in fact ready for trial.

9

1  dubious, this consideration acquires even greater weight.

2      For all these reasons, the motion to consolidate <u>Campbell</u> and

3  <u>Le</u>/<u>Kress</u> is DENIED without prejudice to renewal after the class

4  certification issues have been resolved in those latter cases.  As

5  the plaintiffs in <u>Kress</u> and <u>Le</u> have indicated a willingness to

6  consolidate between their own cases (and have expressed a desire

7  to file a consolidated, amended complaint), the motion to

8  consolidate is GRANTED as to them.

9  **III. Motion to Strike and Dismiss in <u>Kress</u>**

10      PwC has also filed a motion to strike and motion to dismiss

11  in <u>Kress</u>.  The motion (as with the motion filed in <u>Le</u>) principally

12  argues that collateral estoppel bars plaintiffs' class allegations

13  to the extent they are inconsistent with the certified class in

14  <u>Campbell</u>.  In addition, PwC argues that the California Labor Code

15  violations alleged in the complaint cannot serve as a basis for

16  plaintiff's Unfair Competition Law (UCL) claim; that references to

17  the appointment of a receiver must be stricken; that a four-year

18  class period is improper; that all references to "Doe" defendants

19  are improper; and that the request for punitive damages is also

20  improper and must be stricken.[5]

21  ///

22  ///

23

24  <u>See, e.g.</u>, <u>Internet Law Library, Inc. v. Southridge Capital Mgmt.,</u>

25  <u>LLC</u>, 208 F.R.D. 59, 62 (S.D.N.Y. Apr. 11, 2002).

26      [5] To the extent these arguments are duplicated in <u>Le</u>, the
court's analysis in <u>Kress</u> applies equally to the other motion.

**A. Standard**

Rule 12(f) authorizes the court to order stricken from any pleading "any redundant, immaterial, impertinent, or scandalous matter."  A party may bring on a motion to strike within 20 days after the filing of the pleading under attack.  The court, however, may make appropriate orders to strike under the rule at any time on its own initiative.  Thus, the court may consider and grant an untimely motion to strike where it appears proper to do so.  See 5A Wright and Miller, Federal Practice and Procedure: Civil 2d § 1380.

Motions to strike are generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties. See 5A C. Wright & A. Miller, Federal Practice and Procedure: Civil 2d § 1380;  See also Hanna v. Lane, 610 F. Supp. 32, 34 (N.D. Ill. 1985).  If the court is in doubt as to whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied, leaving an assessment of the sufficiency of the allegations for adjudication on the merits. See 5A Wright & Miller, at § 1380.

**B. Analysis**

**1. Collateral Estoppel**

PwC seeks to estop the Kress (and Le) plaintiffs from pursuing certification of a class of California PwC employees, i.e., the class that the Campbell plaintiffs sought to certify.  The doctrine of collateral estoppel prevents the relitigation of issues previously argued and resolved in a prior proceeding. Hydranautics

11

1  v. FilmTec Corp., 204 F.3d 880, 885 (9th Cir. 2000).  Federal law

2  controls the collateral estoppel analysis where a federal court has

3  decided the earlier case.   See McQuillion v. Scharzenegger, 369

4  F.3d 1091, 1096 (9th Cir. 2004).

5       Under both California and federal law, a prior court decision

6  will have preclusive effect under the doctrine of collateral

7  estoppel where (1) the issue to be litigated is identical to that

8  decided in a prior proceeding, (2) the issue is actually litigated

9  in a prior proceeding, (3) the issue is necessarily decided at the

10 prior proceeding,[6] (4) the decision was final on the merits,[7] and

11 (5) the party against whom collateral estoppel is asserted was a

12 party or in privity with a party to the first proceeding.

13 Hydranautics, 204 F.3d at 885; Castillo v. City of Los Angeles, 92

14 Cal. App. 4th 477, 481 (2001).   The party asserting collateral

15 estoppel bears the burden of showing what the prior judgment

16 determined.   Hydranautics, 204 F.3d at 885.

17 _____

18       [6] Two alternate but independently sufficient bases for the
   decision also satisfy this requirement.  In re Westgate-California
19 Corp., 642 F.2d 1174, 1176-77 (9th Cir. 1981).

20       [7] Unlike the approach adopted by California and other
   jurisdictions, the Ninth Circuit has held that a decision may be
21 final for purposes of collateral estoppel even if not final for
   purposes of appeal under 28 U.S.C. § 1291.  Compare Luben Indus.,
22 Inc. v. United States, 707 F.2d 1037, 1040 (9th Cir. 1983) with
   Abelson v. Nat'l Union Fire Ins. Co., 28 Cal. App. 4th 776, 787
23 (1994) ("A judgment is not final for purposes of collateral
   estoppel while open to direct attack, e.g., by appeal."), J.R.
24 Clearwater v. Ashland Chem. Co., 93 F.3d 176 (5th Cir. 1996)
   (declining to adopt Restatement's position that "something less
25 than section 1291 finality is sufficient for purposes of issue
   preclusion"), and GMC Pick-up Truck Fuel Tanks Prods. Liab. Litig.,
26 134 F.3d 133, 146 (3d Cir. 1998).

1    "[I]n deciding whether to apply collateral estoppel, the court

2    must balance the rights of the party to be estopped against the

3    need for applying collateral estoppel in the particular case, in

4    order to promote judicial economy by minimizing repetitive

5    litigation, to prevent inconsistent judgements which undermine the

6    integrity of the judicial system, or to protect against vexatious

7    litigation."  <u>Clemmer v. Hartford insurance Co</u>., 22 Cal. 3d 865,

8    875 (1978).

9        Here, the barrier to application of collateral estoppel is the

10   element of privity.  "[A] nonparty may be bound by a judgment

11   because she was 'adequately represented by someone with the same

12   interests who [wa]s a party' to the suit."  <u>Taylor v. Sturgell</u>, --

13   U.S. --, 128 S. Ct. 2161, 2172 (2008) (quoting <u>Richards v.</u>

14   <u>Jefferson County</u>, 517 U.S. 793, 798 (1996)) (modifications in

15   original).  This includes properly conducted class actions.  <u>Id.</u>

16   "[A]dequate representation is a due process prerequisite to

17   precluding a litigant from his day in court if he was not a party

18   to the earlier litigation."  <u>Headwaters Inc. v. U.S. Forest Serv.</u>,

19   399 F.3d 1047, 1054 (9th Cir. 2005).  "Due process requires that

20   the nonparty have had an identity or community of interest with .

21   . . the party in the first action."  <u>Citizens for Open Access Etc.</u>

22   <u>Tide v. Seadrift Ass'n</u>, 60 Cal. App. 4th 1053, 1070 (internal

23   quotation marks omitted).

24       It is not at all clear that the interests of the <u>Campbell</u>

25   plaintiffs were fully and completely aligned with the class that

26   plaintiffs here seek to represent.  In the <u>Campbell</u> certification

13

order, the court noted that one could view the dissimilarity between job positions as a problem of typicality under Rule 23(a)(3). If Campbell and Sobek were "atypical" representatives, it is difficult to conclude that they had identical interests with those who they were deemed inadequate to represent. Accordingly, the court declines to apply collateral estoppel.

**2. California Labor Code Sections 201, 202, 203, & 226**

PwC also argues that the penalty provisions provided for through California Labor Code sections 201 (immediate payment of wages upon discharge or layoff), 202 (immediate payment of wages upon resignation), 203 (waiting time penalties) & 226 (itemized wage statements) are not cognizable under the UCL. The court agrees. The only remedies available to a private plaintiff under the UCL are injunctive relief and restitution. The remedies afforded by the Labor Code sections identified above are penalties, not restitution. See Tomlinson v. Indymac Bank, 359 F. Supp. 2d 891, 895 (C.D. Cal. 2005) ("The Court agrees . . . that the remedy contained in [Labor Code] section 203 is a penalty because section 203 does not merely compel Indymac to restore the *status quo ante* by compensating Plaintiffs for the time they worked; rather, it acts as a penalty by punishing Indymac to pay Plaintiffs an additional amount. This type of payment is clearly not restitutionary, and thus cannot be recovered by the UCL."). While plaintiffs respond that the UCL's equitable remedies are cumulative and in addition to any remedy provided by the underlying statute, Cal. Bus. & Prof. Code § 17205, UCL remedies are cumulative only if

1  the underlying statute provides for restitution -- which the Labor
2  Code sections identified above do not.  Instead, the provide for
3  penalties, which are not recoverable under the UCL.

4      **3. Appointment of Receiver**

5      Although plaintiffs seek the appointment of a receiver under
6  their UCL claim, plaintiffs have no alleged facts sufficient to
7  show irreparable injury or inadequacy of other remedies, which is
8  required for this "drastic" remedy.  See <u>City & County of San</u>
9  <u>Francisco v. Daley</u>, 16 Cal. App. 4th 734, 745 (1993).  Accordingly,
10 the motion to strike the reference to appointment of a receiver
11 under the UCL claim is granted.

12     **4. Four-Year Class Period for All Claims**

13     Plaintiffs have also improperly alleged a four-year class
14 period for all of their claims, rather than properly confining this
15 four-year class period to only their UCL claim (which also seeks
16 restitution for unpaid overtime wages).[8]  Accordingly, the motion
17 to strike is granted as to all improper four-year references in the
18 complaint.

19     **5. "Doe" Defendants**

20     As plaintiffs concede, all references to "Doe" defendants must
21 be stricken from the complaint.  See <u>Gillespie v. Civiletti</u>, 629
22 F.2d 637, 642 (9th Cir. 1980).

23 ///

24
_____

25     [8] This is a somewhat technical distinction, however, because
   plaintiffs will be able to assert a four-year class period for any
26 claims that may be brought under the UCL.

1        **6. Punitive Damages**

2        PwC also argues that all requests for punitive damages should

3   be stricken.  The court previously addressed a similar argument in

4   <u>Campbell</u>.  As the court noted, when a statute imposes a penalty,

5   that imposition generally does not foreclose recovery of punitive

6   damages.  <u>Trumbull & Trumbull v. ARA Transportation, Inc.</u>, 219 Cal.

7   App. 3d 811, 826 (1983).  If, however, a new right that did not

8   exist at common law is created by statute and a remedy for the

9   violation of that right is provided, "such remedy is exclusive of

10  all others unless the statutory remedy is inadequate."  <u>Id.</u> (citing

11  <u>Orloff v. Los Angeles Turf Club</u>, 30 Cal. 2d 110, 112-113 (1947);

12  <u>Strauss v. A.L. Randall Co.</u>, 144 Cal. App. 3d 514 (1983)).

13       Here, it appears that punitive damages are unavailable for

14  plaintiffs' second through fifth claims.  First, it is well-settled

15  that punitive damages are not available under the UCL.

16  <u>See</u> <u>In re Wal-Mart Stores, Inc.</u>, 505 F. Supp. 2d 609, 620 (2007).

17  Second, it appears that the claims for missed meal breaks, itemized

18  wage statements, and waiting time penalties were not available at

19  common law and accordingly the statutory remedy is exclusive

20  (unless, as no party has argued here, such a statutory remedy is

21  inadequate).  <u>See</u> <u>Czechowski v. Tandy Corp.</u>, 731 F. Supp. 406, 410

22  (N.D. Cal. 1990).  That said, PwC has not shown that unpaid wages

23  for time worked (including time worked at an overtime rate) is a

24  new statutory right that did not exist at common law.[9]

25  _____

26       [9] As the court noted in <u>Campbell</u>, plaintiffs may be required
    to elect a remedy where there is a statutory penalty for conduct

                                16

1 Accordingly, PwC's request to strike the request for punitive

2 damages is granted in part and denied in part.

### IV. Le Motion to Strike and Dismiss

**A. Standard**[10]

5      In order to survive a motion to dismiss for failure to state

6 a claim, plaintiff must allege "enough facts to state a claim to

7 relief that is plausible on its face." Bell Atlantic Corp. v.

8 Twombly, -- U.S. --, 127 S. Ct. 1955, 1974 (2007).  While a

9 complaint need not plead "detailed factual allegations," the

10 factual allegations it does include "must be enough to raise a

11 right to relief above the speculative level." Id. at 1964-65.

12     The Supreme Court recently held that Federal Rule of Civil

13 Procedure 8(a)(2) requires a "showing" that the plaintiff is

14 entitled to relief, "rather than a blanket assertion" of

15 entitlement to relief. Id. at 1965 n.3.  Though such assertions

16 may provide a defendant with the requisite "fair notice" of the

17 nature of a plaintiff's claim, the Court opined that only factual

18 allegations can clarify the "grounds" on which that claim rests.

19 Id.  "The pleading must contain something more. . . than . . . a

20 statement of facts that merely creates a suspicion [of] a legally

21 cognizable right of action." Id. at 1965, quoting 5 C. Wright &

22 A. Miller, Federal Practice and Procedure, § 1216, pp. 235-36 (3d

23

---

24 that also violates common law, but the election is not made at the
   pleading stage. Trumbull & Trumbull, 219 Cal. App 3d at 826.
25

26      [10]  The court also incorporates by reference the motion to
   strike standard set forth above.

1  ed. 2004).[11]

2      On a motion to dismiss, the allegations of the complaint

3  must be accepted as true.  See Cruz v. Beto, 405 U.S. 319, 322

4  (1972).  The court is bound to give the plaintiff the benefit of

5  every reasonable inference to be drawn from the "well-pleaded"

6  allegations of the complaint.  See Retail Clerks Int'l Ass'n v.

7  Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  In general, the

8  complaint is construed favorably to the pleader.  See Scheuer v.

9  Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by

10 Harlow v. Fitzgerald, 457 U.S. 800 (1982).  Nevertheless, the

11 court does not accept as true unreasonable inferences or

12 conclusory legal allegations cast in the form of factual

13 allegations.  W. Mining Council v. Watt, 643 F.2d 618, 624 (9th

14 Cir. 1981).

15 **B. Analysis**

16     PwC has also filed a motion to strike and dismiss in Le.  As

17 with the motion filed in Kress, PwC argues that collateral

18 estoppel bars certification of the state law class previously

19 sought in Campbell.  The motion is denied for the reasons set

20 forth above.

21 ///

22 ///

23 _____

24     [11] The holding in Twombly explicitly abrogates the well
   established holding in Conley v. Gibson that, "a complaint should
25 not be dismissed for failure to state a claim unless it appears
   beyond doubt that the plaintiff can prove no set of facts in
26 support of his claim which would entitle him to relief."  355 U.S.
   41, 45-46 (1957); Twombly, 127 S. Ct. at 1968.

1    **1. FLSA & UCL**

2        PwC also argues that Le has attempted to circumvent the

3    procedures that Congress expressly intended for FLSA actions by

4    repackaging her FLSA claim as a UCL claim.  The UCL is a broad

5    provision which prohibits any "unlawful, unfair or fraudulent

6    business act or practice."  Cal. Bus. & Prof. Code § 17200.  The

7    UCL incorporates other laws and treats violations of those laws

8    as independently actionable under state law.  Chabner v. United

9    Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000).  Le's

10   seventh claim for relief under the UCL incorporates by reference

11   all previous paragraphs of her complaint; accordingly, Le argues

12   that her FLSA claim, as it pertains to California employees, is

13   governed by the UCL's four-year statute of limitations and the

14   out-out procedure provided by Rule 23, rather than the FLSA's

15   two-year statute of limitations[12] and its opt-in procedure.

16       Although district courts within this circuit are divided on

17   the issue, the prevailing view is that violations of the FLSA may

18   serve as the basis for a UCL claim.  See Takacs v. A.G. Edwards &

19   Sons, Inc., 444 F. Supp. 2d 1100, 1116-18 (S.D. Cal. 2006);

20   Tomlinson, 359 F. Supp. 2d at 900; Bureerong v. Uvawas, 922 F.

21   Supp. 1450, 1477 (C.D. Cal. 1996); Willis v. Cal-Western

22   Transport, No. 00-CV-5695 AWI/LJO, slip op. at 4 (E.D. Cal. Dec.

23   22, 2000); Barnett v. Washington Mutual Bank, No. C 03-00753 CRB,

24   2004 WL 2011462 (N.D. Cal. Sept. 9, 2004); Kelly v. SBC, Inc.,

25 _____

26       [12] This period may be extended to three years upon a showing
     of "willful" statutory violations.  29 U.S.C. § 255(a).

No. 97-CV-2729, 1998 WL 92832 (N.D. Cal. Nov. 13, 1998); Aquayo

v. Oldenkamp, No. 04-CV-6279 ASI/LJO, 2005 WL 2436477 (E.D. Cal.,

Oct. 3, 2005); but see Leuthold v. Destination America, Inc., 224

F.R.D. 462, 470 (N.D. Cal. 2004) and Williams v. Trendwest

Resorts Inc., No. 05-CV-605 RCJ/LRL, 2007 U.S. Dist. LEXIS 62396,

at *11 (D. Nev. Aug. 20, 2007).

     At bottom, PwC's argument is one of preemption: to permit

the UCL to "circumvent" the FLSA would, under conflict preemption

analysis, allegedly frustrate the full purposes and objectives of

Congress.[13]  See Barnett, 2004 WL 2011462, at *5.   The

Congressional intent behind the FLSA opt-in procedure was to

prevent employees from receiving "windfall payments, including

liquidated damages" and to protect employers from facing

"financial ruin."  Nevertheless, "[t]hese concerns simply are not

present in a UCL action, where plaintiffs are limited to

restitution."  Tomlinson, 359 F. Supp. 2d at 900.  Moreover, the

Ninth Circuit has held that the FLSA does not preempt state

overtime law.  Pacific Merchant Shipping Ass'n v. Aubry, 918 F.2d

1409, 1418 (9th Cir. 1990) ("the FLSA does not preempt California

from applying its own overtime laws").  By making violations of

other laws independently actionable under the UCL, violations of

-----

     [13] Specifically, the objectives allegedly frustrated are those
contained in the Portal-to-Portal Act, passed in 1947 to amend the
FLSA to include a limitation on retroactive relief and a statute
of limitations.  Bahramipour v. Citigroup Global Markets, No. 04-
CV-4440, 2006 WL 449132, at *3 (N.D. Cal., Feb. 22, 2006).  That
act, however, was "enacted in response to judicial interpretations
of the FLSA -- not in response to a proliferation of state wage
claims."  Barnett, 2004 WL 2011462 at *6.

the FLSA essentially become violations of California's own overtime laws as well.

In addition, the Ninth Circuit has held that "the central purpose of the FLSA is to enact minimum wage and maximum hour provisions designed to protect employees." Williamson v. Geneeral Dynamics Corp., 208 F.3d 1144 (9th Cir. 2000). Courts should therefore interpret remedial legislation in favor of employee protection. See, e.g., Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946); Ramirez v. Yosemite Water Co., Inc., 20 Cal. 4th 785, 794 (1999) ("[P]ast decisions . . . teach that in light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such protection.").[14]

Courts have also routinely applied a four-year statute of limitations to FLSA violations brought under the UCL. See Takacs, 444 F. Supp. 2d at 1116 (noting that a claim under the UCL is "not precluded simply because it is procedurally barred by the underlying statute"). In enacting the federal statute of limitation, Congress indicated that "this limitation does not apply to actions for the recovery of wages brought under state

---

[14] The cases relied upon by PwC appear out of step with the majority of courts to have confronted the issue. Lerwill v. Inflight Motion Pictures, Inc., 343 F. Supp. 1027, 1028 (N.D. Cal. 1972), for example, was referred to as "weak[] precedent" and "dubious authority" by the Ninth Circuit in Williamson, 208 F.3d at 1153.

1  law . . . [and] envisioned not only that state based claims for

2  wages could be asserted, but that they could be governed by

3  separate procedures." Aragon v. Bravo, No. 89-CV-1282 PHX/RCB,

4  1993 WL 432402, at *6 (D. Ariz. May 7, 1993) (citing U.S. Code

5  and Cong. Services, 80th Cong., 1st Session, at 1035 (1947)).

6      In addition, Congress enacted the federal statute of

7  limitation because the absence of an express federal period had

8  engendered non-uniform statutes of limitation for a federal law.

9  "The UCL is a State law and therefore does not present the

10 problems of uniformity addressed by Congress in administering the

11 FLSA." Bahramipour, 2006 WL 4499132 at *6; id. ("The motivation

12 for the two-year statute of limitations was not simply to protect

13 employers, but to ensure uniformity [in interpreting the FLSA]").

14     Accordingly, the court finds that plaintiff's UCL claim is

15 not preempted by the FLSA.  Indeed, by "allowing 'opt-out' class

16 actions and longer statute of limitations for UCL claims,

17 California provides increased protection for its workers,

18 furthering the central purpose of the FLSA." Bahramipour v.

19 Citigroup Global Markets, No. 04-CV-4440, 2006 WL 449132, at *7

20 (N.D. Cal. Feb. 22, 2006).

21     **2. Punitive Damages**

22     PwC also moves to strike Le's request for punitive damages.

23 The court incorporates the discussion of punitive damages set

24 forth above with regard to Kress and further finds that punitive

25 damages are unavailable in FLSA actions seeking unpaid wages.

26 See Shea v. Galaxie Lumber & Constr. Co., 152 F.3d 729, 734 (7th

1  Cir. 1998) (punitive damages available for FLSA § 215(a)(3)

2  retaliation claim but not § 207 overtime claim).  Accordingly,

3  the request to strike punitive damages for the FLSA claim is

4  granted.

5      **3. Constructive Trust**

6      Although the UCL permits broad equitable relief, <u>Fletcher v.</u>

7  <u>Sec. Pac. Nat'l Bank</u>, 23 Cal. 3d 442, 449 (1979), including a

8  constructive trust, <u>People v. Orange County Charitable Servs.</u>, 73

9  Cal. App. 4th 1054, 1078 (1999), plaintiff has not alleged (nor

10 argued that it could allege) facts sufficient to support such a

11 remedy.  <u>See</u> 5 Witkin Cal. Proc. Plead § 796 (4th ed.) (assertion

12 of constructive trust as a remedy requires allegation of "fraud,

13 breach of fiduciary duty, breach of promise to buy property for

14 plaintiff, or repudiation of [an] unenforceable express trust.").

15 Accordingly, the motion to strike is granted as to the request

16 for a constructive trust.

17                        **V. Conclusion**

18     For the reasons set forth above, the court order as follows:

19     1.   The motion to consolidate <u>Campbell</u> and <u>Kress/Le</u> is

20          DENIED; however, the clerks' office is directed to

21          consolidate <u>Kress</u> and <u>Le</u>.  The consolidated case shall

22          remain related to <u>Campbell</u>.

23     2.   The motion to strike and/or dismiss in both <u>Kress</u> and

24          <u>Le</u> are granted in part and denied in part.

25     3.   Pursuant to the conference held before Judge Hollows on

26          August 11, 2008, the plaintiffs in the consolidated

1   Le/Kress action are to file an amended complaint within

2   21 days and the parties are to submit statements

3   regarding a proposed discovery schedule 10 days

4   thereafter.

5   IT IS SO ORDERED.

6   DATED:  August 14, 2008.

7

8

9                                LAWRENCE K. KARLTON

10                               SENIOR JUDGE
                                 UNITED STATES DISTRICT COURT

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26