1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SAMUEL BRANDON KRESS, et al.,

11              Plaintiffs,                    No. CIV S-08-0965 LKK GGH

12        vs.

13   PRICE WATERHOUSE COOPERS,                 <u>ORDER</u>

14              Defendant.
     _____/

15

16              Previously pending on this court's law and motion calendar for July 21, 2011, was

17   plaintiffs' motion to compel further response to interrogatory number 1, filed June 29, 2011.

18   William Baird appeared for plaintiffs.  Norman Hile and Julie Totten represented defendant.

19   After hearing oral argument and reviewing the joint statement, the court now issues the following

20   order.

21   <u>BACKGROUND</u>

22              This case involves a proposed class action concerning overtime compensation and

23   other wages, wherein plaintiff seeks the names and addresses of potential class members

24   including all individuals who worked for defendant Price Waterhouse Coopers ("PwC") from

25   October, 2003 to the present, in the capacity of associate or senior associate in the tax line of

26

1  service in California, and/or as senior associate in the assurance line[1] in California, and did not

2  hold a California CPA license for some or all of the time they worked in these positions.

3  Plaintiffs claim to need this information to determine whether common questions of law or fact

4  exist, and whether their claims are typical of the claims of the proposed classes.[2]  Plaintiffs

5  contend that the protective order in place does not preclude the requested contact information,

6  while defendant argues that it does.[3]  Defendant also contends that plaintiffs have not met their

7  burden to show that the requested information is necessary or appropriate at this pre-certification

8  stage of the case.

9  DISCUSSION

10       The interrogatory at issue here, number one, seeks the identity of the

11  aforementioned associates, including name, address, phone number, mobile phone number, email

12  address, and social security number.  The complete methodology of how to  "Identify" is set forth

13  in footnote 2 of the Joint Statement.

14       This interrogatory was first served on defendant on August 11, 2010, and

15  defendant served its response on November 12, 2010.  Plaintiffs argue that the protective order

16  on file in this case does not preclude production of the requested information.  The disputed

17  portion of the protective order states:

18         Nothing in this Protective Order shall permit or require PwC to
       disclose, before a class is certified, the names and addresses of

19         putative class members.  If a class is ultimately certified in this
       Action, PwC shall disclose such information after an appropriate

20         discovery request or order from the Court and subject to the
       provisions of this Protective Order.  Moreover, nothing in this

21         Protective Order shall require PwC to disclose other private
       confidential information about third parties, including but not

22

23     [1] Plaintiffs have dropped their request for information on associates who were in the
Advisory Line as they no longer seek to certify this group.

24

   [2]Defendant conceded that numerosity was not an issue.

25

26     [3] The parties have stipulated that the protective order on file in the related Campbell case
would apply to this action.  (Dkt. # 25.)  See Campbell v. PwC, 06CV 2376, dkt. # 43.

limited to telephone numbers, social security numbers and
individualized compensation or tax-related data, absent written
permission from the third party authorizing PwC to disclose such
information.

Campbell, (dkt. #43 at ¶ 3.)  Plaintiffs argue that this language does not prohibit disclosure

before class certification of names and addresses, but rather makes no determination about the

ultimate production of the contact information at issue.  Plaintiffs claim they never would have

agreed to refrain from seeking contact information.

Defendant argues that this language specifically precludes *pre*-certification

disclosure.  Only once a class is certified does the order permit or require this information to be

disclosed upon an appropriate discovery request or court order.

The protective order is ambiguous.  By its literal terms,  "[n]othing in this

Protective Order shall permit or require..." does not preclude normal discovery activities *outside*

*the Protective Order* designed to elicit the requested information.  Plaintiffs are therefore correct

if one only looks at this first sentence of paragraph 3.  Also favoring plaintiff's construction is

the fact that the overriding purpose of the protective order is to protect the confidentiality of

information; using a protective order as a Rule 16 bifurcation of discovery device is an odd use

of protective orders.  Further favoring plaintiff's interpretation, paragraph 15 of the Protective

Order certainly indicates that the scope of discovery is *not* affected by the Protective Order: "This

protective Order shall not enlarge or *affect* the proper scope of discovery in this or any other

litigation."[4] (Emphasis added). Finally, at hearing, the court understood that defendants drafted

the protective order for use in another action, and incorporated its terms into this litigation.  See

Docket #25.  Drafting ambiguities are generally construed against the drafter.  Cahill Dehe Band

etc. v. California, 618 F.3d 1066, 1076 (9th Cir. 2010).

---

[4]One could argue whether timing of discovery is included within the terms "scope;"
however, at best for defendant, this issue makes the protective order more ambiguous.

3

On the other hand, the sentence in paragraph 3 (quoted above)[5] describing how class members identification can be disclosed and protected *post-certification* implicitly favors defendant's construction that the order was designed to preempt *pre-certification* discovery.

The court finds that overall, the Protective Order does not "affect" the scope, including timing, of discovery concerning pre-certification class member identification discovery; therefore, the requested discovery will not be denied on the basis that the Protective Order precludes it.

Having found that the protective order does not resolve the issue, the next step is to determine the ordinary burden to acquire such pre-certification discovery and whether plaintiffs have met it.  The parties disagree over the burden, plaintiffs arguing that it requires only a very minimal prima facie showing, citing Tomassi v. City of Los Angeles, 2008 WL 4722393 (C.D. Cal. 2008), and others.  Although Tomassi was an FLSA case, plaintiffs sought similar information of potential class members pre-certification.  In granting the motion to compel, the court relied on the FLSA and FLSA cases, but also relied on Gulf Oil Co. v. Bernard, 452 U.S. 89, 101 S.Ct. 2193 (1981), a Rule 23 class action.  In the end, the court conducted a standard balancing of the privacy against relevance analysis.  Id. at *3-4.

Defendant has set forth binding Ninth Circuit authority which specifies the burden:

> Although in some cases a district court should allow discovery to aid the determination of whether a class action is maintainable, the plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations. Absent such a showing, a trial court's refusal to allow class discovery is not an abuse of discretion. Doninger v. Pacific Northwest Bell, Inc., 564 F.2d 1304, 1313 (9th Cir.1977).

---

[5]"If a class is ultimately certified in this Action, PwC shall disclose such information after an appropriate discovery request or order from the Court and subject to the provisions of this Protective Order."

1    Mantolete v. Bolger,767 F.2d 1416, 1424 (9th Cir. 1985).

2         The court finds from generally comparing this case with its companion Campbell,

3    it stands to reason that because the district court found sufficient reasons to certify the class in

4    Campbell, there exists in all probability at the very least, a prima facie case for class certification

5    in this related case.  The practice and policies at issue in both cases are probably common and

6    typical.  Moreover, the threshold for pre-certification discovery set forth in Mantolete has not

7    been stringently interpreted.  Courts generally err on the side of allowing discovery.

8              More recently, in Vinole v. Countrywide Home Loans, Inc., 571
             F.3d 935 (9th Cir.2009), the Ninth Circuit surveyed its prior case
9         law regarding pre-certification discovery (including Mantolete)
             and concluded as follows: "Our cases stand for the unremarkable
10        proposition that often the pleadings alone will not resolve the
             question of class certification and some discovery will be
11        warranted." Id. at 942. The Ninth Circuit explained that "[d]istrict
             courts have broad discretion to control the class certification
12        process, and whether or not discovery will be permitted lies within
             the sound discretion of the trial court." Vinole, 571 F.3d at 942
13        (internal quotation marks, brackets, and ellipses omitted). The
             Ninth Circuit cautioned however, that " 'the better and more
14        advisable practice for a District Court to follow is to afford the
             litigants an opportunity to present evidence as to whether a class
15        action is maintainable.' " Id. (quoting Doninger, 564 F.2d at 1313).

16   Nguyen v. Baxter Healthcare Corp., ___ F.R.D. ___, 2011 WL 2183993, *4 (C.D. Cal. 2011).

17        Discovery is necessary in some cases to determine the propriety of a class action.

18   If discovery is needed to determine the existence of a class or set of subclasses, it would be an

19   abuse of discretion to deny it.  Kamm v. Califorrnia City Development Co., 509 F.2d 205, 210

20   (9th Cir. 1975).  It appears to be a common practice in the class action context for disclosure of

21   potential class members, including names, addresses, and telephone numbers, to be disclosed.

22   Artis v. Deere & Co., 2011 WL 2580621 (N.D. Cal. 2011), Currie-White v. Blockbuster, Inc.,

23   2010 WL 1526314, at *2 (N.D. Cal. 2010), Putnam v. Eli Lilly & Co., 508 F. Supp.2d 812, 814

24   (C.D. Cal. 2002).

25        The Vinole court noted that although discovery is not always appropriate on class

26   certification issues, "[t]he propriety of a class action cannot be determined in some cases without

                                                5

1   discovery..." <u>Id.</u> at 942.  (citation omitted).  <u>Mantolete</u> and <u>Doninger</u>, as interpreted by <u>Vinole</u>,

2   suggest that a strict prima facie showing is not required in all cases, but rather give the court

3   much latitude in establishing such a showing.  <u>See</u> <u>Kaminske v. JP Morgan Chase Bank, N.A.</u>,

4   2010 WL 5782995 (C.D. Cal. 2010).

5          Plaintiffs assert a need for this information to aid them in meeting the

6   requirements of Rule 23 class certification.  They will utilize the discovery to presumably contact

7   the potential class members and determine whether common questions of law or fact exist, and

8   whether the claims of potential class members are typical of the claims of the proposed class

9   (subclasses).  In particular, plaintiffs asserts the need for discovery in order to focus on these

10  questions as they pertain to the subdivisions of the Tax Line.  In support, plaintiffs note that their

11  proposed Tax Class includes associates who worked from October 2003 to the present whereas

12  the already conditionally certified FSLA class of TPDG Tax Associates does not begin until

13  December 11, 2005, leaving a two year gap of information.  Plaintiffs add that their proposed

14  Tax Class is not limited to individuals who worked in the TPDG Tax line of service, but will also

15  include the Industry Services Group, Financial Services Group, and International Tax Services

16  group of the Tax line.  Finally, they point out that the already conditionally certified FLSA class

17  of TPDG Tax associates does not include individuals who worked as Senior Associates as does

18  this proposed Tax Class.  While plaintiffs' counsel did not satisfactorily answer the

19  undersigned's question at hearing as to whether counsel already had enough information on

20  common policies and practices under attack, such that pre-certification discovery was really

21  unnecessary, the undersigned presumes that contacting class members will be used to confirm

22  what counsel thinks he knows from the <u>Campbell</u> action as opposed to blindly fishing in the first

23  instance.

24         Defendant argues that pre-certification discovery is not necessary because

25  plaintiffs have already obtained discovery of 235 individuals through the conditionally certified

26  FLSA nationwide action, who are also in the group of individuals for whom plaintiffs now seek

1   discovery.   However, it is an open question whether these individuals automatically fit into these

2   sub-groups.  Although these individuals may have worked in senior associate positions from

3   October, 2003 to the present, they did not necessarily work in the sub-groups listed above by

4   plaintiffs.

5            Based on the discussion above, the undersigned finds that the proposed discovery

6   is necessary to confirm questions of commonality and typicality, and finally whether this action

7   may be maintained as a class action.   Nevertheless, in light of the record in the <u>Campbell</u> case,

8   and the discussion below, omnibus identification discovery of all potential class members for this

9   litigation is not necessary at this time, and would be unduly burdensome.

10            Defendant has raised concerns surrounding the burden to produce such

11   information, one of which will require it to evaluate each individual to determine licensure

12   information which is not readily available in most cases.  Defendant argues that whether an

13   associate was licensed would require a person by person search through personnel records, and if

14   not located there, through outside sources such as the Board of Accountancy.   The declaration of

15   David Prahl supports this argument.  He states that he was required to perform such searches in

16   the <u>Campbell</u> litigation:

17            This was a very difficult and time-consuming process, and required
            an individual-by-individual assessment of CPA status.  Indeed,
18            though PwC typically requests that their employees notify PwC's
            compliance department once they have received their CPA
19            licenses, reporting of this information is inconsistent, and it does
            not necessarily yield the actual date on which any particular
20            individual's licensure status became effective.  Many individuals,
            for example, report their licensure status well after their licenses
21            actually became effective.

22                                                            ...

23            In addition, the records available through the California Board of
            Accountancy ("CBA") website were often unhelpful in
24            determining class member licensure status because the individuals
            listed on the website as CPA license holders sometimes use names
25            that are different than the names on record at PwC.  This is often
            the case with individuals who became married between the time
26            they began their employment at PwC and the time they obtained
            their CPA licenses.  In addition, we found multiple CPA license

                                                            7

1   holders listed on this website with the same name.

2   (Prahl Decl., ¶¶ 9, 10.)

3           The licensure verification is the main aspect of defendant's burden that appears

4   unduly burdensome.  Therefore, as proposed by defendant in the alternative, defendant will not

5   be required to verify the accuracy of the license or its effective date, but shall produce the

6   requested discovery, as limited to a random selection of 5% of those individuals meeting the

7   proposed class criteria (see footnote 2 of the Joint Statement) from each California office during

8   the relevant time period.  However, in order to ensure randomness, the 5%  shall be chosen on a

9   strictly alphabetical methodology, i.e., last names starting with "A" and proceeding through the

10  alphabet until 5% has been attained.[6]  Defendant will not be required to search for license

11  information beyond that already found in its personnel files.  The discovery responses are further

12  limited to name, last known residence address, last known residence telephone number, last

13  known mobile telephone number, and last known personal e-mail address.  Social Security

14  numbers shall not be disclosed at this time, and absent a further demonstration of need for this

15  information, will not be disclosed.

16  CONCLUSION

17          Accordingly, IT IS ORDERED that:

18          1.  Plaintiff's motion to compel further response to interrogatory number 1, filed

19  June 29, 2011, (dkt. #219), is granted in part, subject to the limitations set forth in this order.

20  ////

21  ////

22  ////

23  ////

24

25          [6]The undesigned presumes that by suggesting 5% "of each office," defendant represents
    that there are sufficient numbers of relevant persons in each office such that 5% represents a
26  meaningful number of potential contacts, i.e., no less than 50 total from all of California.

1        2.  Defendant shall produce all discovery as ordered herein within twenty-eight

2   days of this order.

3   DATED: August 8, 2011

4                                          /s/ Gregory G. Hollows
                                    UNITED STATES MAGISTRATE JUDGE

5   GGH:076
    Kress0965.mtc.wpd

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

9