IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SAMUEL BRANDON KRESS, et al.,

    Plaintiffs,                                   No. CIV S-08-0965 LKK GGH

    vs.

PRICE WATERHOUSE COOPERS,              ORDER

    Defendant.
_____/

*Introduction and Summary*

    Previously pending on this court's law and motion calendar for May 23, 2012, was defendant's motion for protective order to quash Rule 45 subpoenas issued to seven non-party audit clients of PwC.[1]

    To the uninitiated in the PriceWaterhouse Coopers (PwC) associate "overtime" disputes, which includes this undersigned magistrate judge who has had only sporadic involvement with the disputes, this Kress action, with four discrete classes, or subclasses, along with the related Campbell action, is reminiscent of the Abbott and Costello routine of *Who's on first, What's on second, and I-Don't-Know-Who's on third.* At least it seems that way when

---

[1] The motion was filed in the form of a joint statement, filed May 16, 2012, following a telephone conference with the undersigned and order issued April 20, 2012. That order stayed the subpoenas pending further order.

1

1  trying to identify class members and potential class members in the Fed. R. Civ. P 23 classes and
2  the FSLA "opt-in" classes, identification which PwC insists is the *sine qua non* for permitting the
3  third party discovery at issue.  After extensive review of the background of these litigations, and
4  because the parties have not pointed the undersigned to any limitations or birfurcations of
5  discovery presently applicable, only a very limited protective order is issued.
6  <u>Background</u>
7         The <u>Kress</u> action is a class action concerning overtime compensation and other
8  wages.  Plaintiffs claim that they were misclassified and do not meet the tests for exemption
9  under law, while PwC asserts that these class members were properly classified as exempt under
10 the Professional Exemption or the Administrative Exemption.  There are four classes in the
11 action: (1) Senior Audit Associates asserting claims under California Labor Law, (2) Tax
12 Associates and Senior Tax Associates asserting claims under California Labor Law, (3)
13 nationwide Attest Associates (Assurance Line of Service) asserting FLSA claims, and (4) a class
14 consisting of Threat and Vulnerability Management Associates; Disputes, Analysis and
15 Investigations Associates (Advisory Line of Service); and Tax Projects Delivery Group
16 Associates (Tax Line of Service), asserting FLSA claims.
17        Of the four classes covered by this action, class certification is in flux.  The Senior
18 Audit Associates are part of a putative Rule 23 class asserting claims under California law.  Their
19 class certification motion is currently under submission with Judge Karlton.  The Tax Associates
20 and Senior Tax Associates are also part of the putative Rule 23 class asserting claims under
21 California law.  Briefing on plaintiffs' class certification motion for this group will begin later
22 this year.  The third group consists of Attest Associates in the Assurance Line of Service which is
23 already conditionally certified as an FLSA nationwide action.  Defendant indicates that it will
24 move to de-certify this class in the future.  The fourth group consists of the Threat &
25 Vulnerability Management Associates in the Advisory Line of Service; Disputes, Analysis and
26 Investigations Associates in the Advisory Line of Service; and Tax Projects Delivery Group

Associates in the Tax Line of Service. This group has been conditionally certified as an FLSA Nationwide class. Defendant plans to move to decertify this group also.

The district judge defined the Attest Associates for purposes of FLSA claims in its November 25, 2009 conditional certification order as Associates in the Attest Division of the Assurance line anywhere in the United States at any time from December 11, 2005 to the present and who were not licensed. (Dkt. no. 92 at 17.)

In conditionally certifying the Associates in the Assurance, Advisory and Tax divisions (groups (3) and (4) listed above), the district court noted that unlike the Rule 23 certification in Campbell, the FLSA claims in this case involved different standards for exemption, and class certification should be considered in light of the claims involved. Furthermore, Rule 23 and FLSA section 16(b) involved different standards for certification. (Id. at 4.) With these distinctions in mind, the district court considered certification of the FLSA group by means of a two stage process. At the first tier or notice stage, the pertinent inquiry is whether the individuals are sufficiently similarly situated such that notice should be sent to prospective plaintiffs. (Id. at 7.) Recognizing that the FLSA does not define "similarly situated," the district court cited Gerlach v. Wells Fargo & Co., No. 05-0585, 2006 U.S. Dist. LEXIS 24823, *6-7 (N.D. Cal. Mar. 28, 2006), which requires plaintiffs to provide "substantial allegations, supported by declarations or discovery, that 'the putative class members were together victims of a single decision, policy, or plan.'" (Id. at 7.) At this first stage, the standard is fairly lenient, and the court is not required to consider defendant's evidence, probably because the certification at this stage is conditional. It is at the second stage, typically after discovery has been completed, and through a motion to decertify, that a stricter definition of "similarly situated" is applied.

The district judge's basis for finding conditional class certification at the first stage was that the prospective class members' job duties were similar in pertinent regards. In support, plaintiffs had presented evidence of PwC's training, audit methodology, and applicable

professional standards.  For example, training was uniformly provided through PwC's "Go Audit" program.  The audit methodology was uniform, by way of an internet based Audit Guide adhered to by employees.  There was also evidence that PwC's procedures were uniform across multiple offices.  (Id. at 15.)  All prospective class members were subject to a level of supervision.  Because plaintiffs had provided some evidence of similarity, conditional class certification was found to be appropriate.  (Id. at 16.)

PwC's defense is based on either the professional and/or administrative exemption.  In Campbell v. PwC, 642 F.3d 820, 832 (9th Cir. 2011), the Ninth Circuit defined the administrative exemption as requiring an inquiry into what "associates actually do (and what PwC reasonably expects them to do) during audit engagements."  The elements of this exemption related to the discovery at issue here are:

> 1. The employee performs work "directly related to management policies or general business operations" of either the employer or the employer's clients;
>
> 2. The employee "customarily and regularly exercises discretion and independent judgment;"
>
> 3. The employee works "under only general supervision" while either: (1) performing work along specialized or technical lines requiring special training, experience, or knowledge, or (2) executing special assignments and tasks;
>
> 4. The employee is "primarily engaged" in exempt work meeting the above requirements....

Campbell, 642 F.3d at 831, quoting Cal. Code Regs. tit. 8, § 11040(1)(A)(2) (California Industrial Welfare Commission Wage Order No. 4-2001).  The Campbell Court explained some of the terms in these elements.  The first element requires that the associates' work be of "'substantial importance' to management or business operations," but more importantly questions whether it is of "'substantial importance' to the management or operations of the clients' businesses."  Id. at 832, citing 29 C.F.R. § 541.205(a).

\\\\\

The court had trouble defining the term "general supervision" in the third element because there was little precedent or legal guidance on its meaning. Id. at 831-32. Such a determination would have to await the trial stage. Id. at 832.

The Campbell court also explained that the professional exemption concerns "the employee's actual job duties and responsibilities." Id. at 830. The court has reviewed the discovery requests with these definitions in mind.

*The Proposed Discovery*

Pertinent to the instant motion is plaintiffs' service of seven subpoenas on PwC's non-party audit clients, seeking documents and testimony. The seven clients are E.I. du Pont de Nemours & Company, American Express, CBS Corporation, Kraft Foods, Inc., Sara Lee Corporation, Goodyear Tire & Rubber Company, and Ford Motor Company.

The seven subpoenas are almost identical and request three categories of documents: (1) all engagement and opinion letters received from PwC in connection with the audit of your year-end financial results, from January 1, 2005 to present; (2) all reports and/or memoranda received from PwC in connection with the audit of your year-end financial results, from January 1, 2005 to present; and (3) all documents evidencing advice from unlicensed audit staff of PwC, from January 1, 2005 to present.

The subpoenas also request five categories of deposition testimony "from a representative"[2]: (1) your knowledge of work performed by PwC in connection with the audit of your year-end financial results, from January 1, 2005 to present, including identity of personnel involved from PwC and your company, and your knowledge of roles and responsibilities of work

---

[2] Requiring a non-party organization to designate a representative to give testimony on certain, designated topics is authorized by Fed. R. Civ. P. 30(b)(6) and 45. It is unclear the extent to which testimony of the representative can bind the non-party entity, or be admissible in evidence, as this testimony cannot be considered the admissions of a party opponent, and the nature of a Rule 30(b)(6 deposition is that it is often based on multiple levels of hearsay. However, it is unnecessary here to clear up any uncertainties in the ultimate admissibility of a non-party's representative testimony.

performed by PwC's audit staff in connection with these audits; (2) the ways unlicensed audit staff of PwC performed the management or operations of your business for each year from January 1, 2005 to present; (3) any advice you received from PwC's unlicensed audit staff when PwC was performing your audits, from January 1, 2005 to present; (4) your understanding of and expectations regarding the level of supervision provided by PwC to unlicensed audit staff during PwC's audits, from January 1, 2005 to present; and (5) your understanding of and expectations regarding the discretion and independent judgment that PwC permitted its unlicensed staff to exercise during PwC's audits, from January 1, 2005 to present.

*Discussion*

A. Standing

The parties first dispute PwC's standing to object to the subpoenas. While PwC does not having standing to object on the basis of undue burden imposed on a third party *per se*, it may object if it has "a personal right or privilege with regard to the documents sought," Fenstermacher v. Moreno, 2010 WL 5071042, *3 (E.D. Cal. 2010), "or if its own interest is jeopardized by discovery sought from a third person." Koh v. S.C. Johnson & Son, Inc., 2011 WL 940227, *2 (N.D. Cal. 2011) (quoting 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure Civil 3d § 2035).

There is no doubt that extensive discovery, requiring many person hours of work by the third parties to satisfactorily respond to the requested discovery, creates unwanted and unrequested burdens. The third parties get no recompense, generally, for the expending of their resources on a matter in which they have no interest. But see Fed. R. Civ. P. 45 (b)(3)(C). It follows from a common sense standpoint that the more potentially burdensome the requested discovery, the more one could be upset with the persons/entity that has "caused" the upset, and that ire could well be directed at PwC in this case. Here, facially extensive discovery has been directed to the clients of PwC, and PwC has an interest in preserving its business relationships with these seven major clients. Should the clients be required to comply with these discovery

6

requests as propounded, they could seriously question whether it is worth their time and effort to be engaged in business relations with PwC. PwC has standing to protect its business interests.

Moreover, to the extent that a colorable relevance (in the discovery context) claim can be made which should preclude, or limit, the proposed discovery, PwC has standing on its own to protest the needless incurrence of discovery expense which would be entailed by its lawyers flying around the country on the proverbial goose chase when only ducks are at issue in the litigation.

B. Scope of Discovery

At this stage of the proceedings, discovery has not been phased, or otherwise limited. Also of importance, the Joint Statement does not indicate that the discovery at issue here is limited to one of the four described classes. The Joint Statement does not indicate that the subjects of the third party discovery at issue here, large nationwide corporations which have retained PwC, would not have information relevant to *all* of the proposed classes. That is, the Joint Statement does not clearly indicate which corporations are related to the California claims and which are only related to the nationwide FLSA claims. Rather the parties assume the court knows to what potential class members they are referring.

However, by scrutinizing the Joint Statement (at page 7), and by the emphasis at oral argument to the "Attest" FSLA opt-in class, and also to the Senior Audit Associates (California Rule 23 class) (page 7), the undersigned understands that these two classes may be at issue.

PwC first argues, at p, 7, that the requested discovery cannot be relevant to the Senior Audit Associates because the class certification motion is under submission (and hence discovery could not assist that motion), and premature because the class issues are not ripe for discussion until a class has been certified. This is an incorrect argument. Discovery pertinent to the class issues may commence when discovery otherwise commences in a pled class action unless and until a court phases the discovery otherwise. As observed above, the parties indicated

no such phasing is presently in effect.[3]

With respect to the 1700 or so opt-in FLSA class members, the Attest Associates, the question on this motion for protective order becomes whose burden it is to identify whether any of the pertinent Associates worked at a corporation which is being subpoenaed. Obviously, if no PwC Attest Associates worked at a particular company at all, or for less than the time indicated in the discovery request, discovery directed to those companies would be irrelevant for a situation where no class members were working at all, or not at certain periods. Just as obviously, discovery is relevant for those situations where class members were involved in PwC audit work.[4]

PwC argues that plaintiffs know who the opt-in class members are, and that it should be plaintiff's burden to query these members in order to determine whether discovery might be relevant at all, or for certain times. PwC further argues that if any Associates are found, discovery must be limited to those Associates and no other persons. With respect, PwC is wrong on both counts. First, when moving for a protective order, the moving party has the burden of demonstrating the predicates for such an order. <u>Nexedge, LLC v. Freescale Semiconductor</u>, 820 F. Supp.2d 1040, 1042 (D. Ariz. 2011). In this case, PwC knows the identity of the class members as well as plaintiffs, and furthermore, has (or should have) access to records of who worked where and when. PwC cannot foist the burden of identification of who-worked- where,- when, off on plaintiffs, requiring them to make 1700 inquiries, when PwC should have access to the information without making a single query. Not having supplied the court with information to the contrary, PwC's burden/relevance argument fails.

---

[3] In many cases, discovery pertinent to a common issue is relevant whether a named plaintiff's case is only at issue, or the class as a whole. For example, in a gender discrimination case, assume that the policy at issue is whether a company would not promote women of child bearing age. Discovery as to that policy would be relevant in either situation, and regardless of whether a class was certified.

[4] The undersigned understands that the work of the Attest Associates is audit type work.

8

Secondly, for the reason set forth in footnote 3 above, discovery may be obtained to prove or disprove a certain common policy or practice regardless of the number of persons involved in the litigation. The proof works for one or many Associates employed for a particular audit at a particular time. PwC was adamant at hearing that an Associate's work was fungible – it did not matter whether one was a licensed CPA or not. Whatever the audit task, it was just as likely that a class member Associate could perform the task as a non-class member.[5]

Having properly described the scope of discovery pertinent to this protective order motion, the court turns to the individual requests at issue.

C.   Document Requests

PwC contends that Requests numbered 1 through 3, directed at the third party companies, seek documents that are already in PwC's possession, and pursuant to Fed. R. Civ. P. 26(b)(2)(C)(I), such discovery must be restricted where it can be obtained from a more convenient, less burdensome or less expensive source. Although plaintiffs agreed at hearing to accept production of category number 1, (all engagement and opinion letters received from PwC in connection with the audit of the client's year-end financial results, from January 1, 2005 to present), directly from PwC, plaintiffs emphasized that they previously requested engagement letters directly from PwC, but that PwC objected, and then finally produced only those work papers for the audits on which the particular deponents worked.

Oral argument did little to elucidate the relevance of the engagement letters, which PwC contends do not contain information describing the work that the individual Associates performed, and are therefore not relevant. Furthermore, PwC maintains, without support, see above, that there likely are many audits in which plaintiff Associates did not participate. PwC states that it has produced sixty-one separate engagement files already. Plaintiffs contend, on the other hand, that the information in the engagement letters is relevant

---

[5] As the undersigned understand the issues in this case, licensure would disqualify one from the class as such persons would be exempt from FLSA overtime laws.

9

and PwC has already implied that class members have worked on these audits.  In any event, plaintiffs contend that even if no class members worked on the subject audits, these letters are relevant to show a pattern and practice (of something).[6]  At the very least, the letters might well be of assistance for organizational purposes.

Because PwC has denied an undue burden in regard to the engagement letters, and because the requested information appears to be reasonably calculated to lead to the discovery of admissible evidence, i.e., PwC has not met its irrelevance burden, the engagement letters shall be produced by PwC.[7]

In regard to opinion letters, PwC asserts that they are publicly available in these companies' annual reports.  Therefore, PwC will not be tasked with producing these letters, but the companies will.

In regard to the second and third category of documents, all reports and/or memoranda received from PwC in connection with the audit of the audit client's year-end financial results, and all documents evidencing advice from unlicensed audit staff of PwC, plaintiffs contend that production responsive to these requests may include documents which were either handwritten or for which PwC may not have copies, and therefore they should be produced by the third party companies.  As with the first category, PwC maintains that plaintiffs should be required to first seek this discovery from PwC.

Based on information which came to light at hearing concerning the non-distinction between licensed and unlicensed Audit Associates, and explained in the joint statement, there is no distinction between licensed and unlicensed Associates when it comes to "duties assigned, discretion exercised or supervision provided to Senior Associates." (Dkt. no.

---

[6] No written exemplar of an engagement letter was presented to the undersigned in the Joint Statement by either party.  Defense counsel found an exemplar on their I-pad during hearing and offered to let the undersigned see it, but the dynamics of the hearing prevented this.

[7] Fed. R. Civ. P 26(c)(2) permits a court in fashioning a protective order to "order that *any* party or person provide or permit discovery." (Emphasis added)

282 at 10 n. 5.) Furthermore, PwC at hearing explained that licensure status played no role in assignments given on audits. More importantly, licensure status does not matter in relation to the exemptions applicable, as explained by defendant, referring to the Ninth Circuit's ruling in Campbell. In fact, PwC indicated at hearing that management does not usually know which Associates are licensed, and that it goes to the Board of Public Accountancy website to determine which Associates are licensed. Licensing does not become important until an Associate is promoted to manager, where licensing is required.

At hearing, plaintiffs conceded that the advice given was the main issue, that plaintiffs do not really need to know if an Associate was licensed or not, and they could in fact modify the request so that these non-parties would not be required to investigate whether an Associate was licensed or not. Therefore, categories two and three shall be produced by PwC, and the third category is modified to eliminate the word, "unlicensed."

Accordingly, the non-parties subject to the seven subpoenas will not be tasked with any document production, except for opinion letters, and defendant's motion for protective order regarding the documents is granted as limited herein.

D. Deposition Requests

As discussed supra, whether an Associate was licensed or unlicensed is of no consequence to this discovery. Therefore, to the extent that discovery is permitted, it will not require the audit client to differentiate between licensed and unlicensed Associates.

Request Number 1 - Your[8] knowledge of work performed by PwC in connection with the audit of your year-end financial results, from January 1, 2005 to present, including identity of personnel involved from PwC and your company, and your knowledge of roles and responsibilities of work performed by PwC's audit staff in connection with these audits.

\\\\\

---

[8] The court presumes that the term "your" in each category refers to the entity's knowledge, and not the deponent's knowledge.

1      This request seeks relevant information, the investigation of which, and
2 preparation for deposition, does not appear to be especially onerous.[9]

3      Request Number 2 - The ways unlicensed audit staff of PwC performed the
4 management or operations of your business for each year from January 1, 2005 to present.

5      PwC argues that this request, along with requests 4 and 5, seek information
6 concerning the administrative exemption and the Ninth Circuit has already limited the
7 application this exemption to the plaintiffs' work during audit engagements, and PwC's
8 expectations of this work. The undersigned reads Campbell more broadly than PwC does.
9 Although Campbell did focus on "what the Attest Associates actually do (and what PwC
10 reasonably expects them to do) during audit engagements," the court further explained the first
11 element of the administrative exemption, especially whether it is substantially important "to the
12 management or operations of the *clients' businesses*." Campbell, 642 F.3d at 832 (emphasis
13 added). A client could know if the Associates' work was of substantial importance to the client's
14 business. Therefore, this request is relevant to the first element of the administrative exemption.

15      Since request number 2 is not limited to the work performed during the audits
16 themselves, but is overbroad in including how audit staff may have performed work outside of
17 audit engagements, it will be limited to work actually done on audit engagements, and that work
18 performed only by Audit Associates, without the distinction of whether they were licensed or
19 unlicensed.

20      Request Number 3 - Any advice you received from PwC's unlicensed audit staff
21 when PwC was performing your audits, from January 1, 2005 to present.

22      First, the term "unlicensed" should be removed from this request. Second, the
23 term "audit staff" should be defined as "Audit Associates" only. As so limited, plaintiffs may
24 proceed with this request.

---

[9] The undersigned was surprised at hearing when informed that the number of audits to be analyzed was relatively small, albeit that each audit may take a substantial amount of time.

12

<u>Request Number 4</u> - Your understanding of and expectations regarding the level of supervision provided by PwC to unlicensed audit staff during PwC's audits, from January 1, 2005 to present.

While testimony on this subject per se may or may not be admitted at trial based on the court's interpretation of the administrative exemption as defined by the Ninth Circuit, the undersigned is confident that it may lead to the acquisition of admissible evidence, and it is therefore approved. For example, an "expectation" might be based on what was conveyed by PwC to the client. The request should also eliminate the term "unlicensed" for reasons explained above.

<u>Request Number 5</u> - Your understanding of and expectations regarding the discretion and independent judgment that PwC permitted its unlicensed audit staff to exercise during PwC's audits, from January 1, 2005 to present.

As with Request Number 4, this request may lead to the discovery of admissible evidence, to be determined at trial. It is quite possible, however, that the entity's representative may have no information on this topic and no means to ascertain a response, and without the distinction as to unlicensed audit staff, but permitted as to all Audit Associates.

<u>CONCLUSION</u>

Accordingly, IT IS ORDERED that:

1. PwC's motion for protective order, filed May 16, 2012 in the form of a joint statement, (dkt. #282), is denied in part and granted in part.

2. PwC shall produce documents as ordered herein, within twenty-one days of this order.

3. Plaintiffs may proceed with subpoenas on third parties which are tailored as provided in this order.

\\\\\

\\\\\

4. Nothing in this protective order precludes a subpoenaed company from making burden or other objections in its district where subpoenaed.[10]

DATED: June 4, 2012

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

GGH:076/Kress0965.sub.wpd

---

[10] While the undersigned can certainly limit or define the discovery permitted in the action as a whole, disputes to be raised by the third party itself must be brought in the district where the subpoena was served. Fed.R.Civ.P. 45(c)(3) referencing the subpoena "issuing court" as the court which decides disputes brought by the third party.