1

2

3

4

5

6

7

8
                    UNITED STATES DISTRICT COURT

9
              FOR THE EASTERN DISTRICT OF CALIFORNIA

10
SAMUEL BRANDON KRESS, et al.,
on behalf of themselves and
11
all others similarly situated,

12
          Plaintiffs,                NO. CIV. S-08-0965 LKK/GGH

13
      v.

14
PRICEWATERHOUSECOOPERS LLP,
                                          O R D E R
15
          Defendant.
_____/
16

17         Plaintiffs have brought this wage and hour action arising

18    under the Fair Labor Standards Act, 29 U.S.C. § 201, <u>et seq.</u>

19    (FLSA), and California labor laws, against defendant

20    PricewaterhouseCoopers LLP ("PwC").   They have brought their

21    federal claims as a "collective action" under Section 16(b) of the

22    FLSA, 29 U.S.C. § 216(b), and their state claims as a state-wide

23    class action.   This court conditionally certified a nationwide

24    collective action under Section 16(b).   <u>Kress v.</u>

25    <u>PricewaterhouseCoopers, LLP</u>, 263 F.R.D. 623 (E.D. Cal. 2009).

26    ////

                                      1

1    In regard to the California labor law claims, plaintiffs now

2 seek to proceed as a state-wide class action.  They accordingly

3 move, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), to certify

4 the following class:

5        All current and former individuals employed by
         PricewaterhouseCoopers LLP ("Defendant" or "PwC") in the
6        State of California as Senior Associates in the
         Assurance line of service at any point from October 27,
7        2003 through the time this action is certified as a
         class action ("Class Period"), who were not Certified
8        Public Accountants ("CPAs") and who engaged in providing
         audit services to PwC's clients (hereinafter, "Senior
9        Audit Associates" or the "Class").[1]

10 Plaintiffs' Motion for Class Certification (ECF No. 321) p.1 (ECF

11 p.8).  For the reasons set forth below, the motion will be granted.

12 **I.   INTRODUCTION**

13    The Second Amended Complaint alleges that PwC violated

14 California wage and hour laws by, among other things, failing to

15 pay required overtime to plaintiffs.  California law:

16        provides that a California employee is entitled to
         overtime pay for work in excess of eight hours in one
17        workday or 40 hours in one week.

18 Harris v. Superior Court, 53 Cal.4th 170, 177-78 (2011), citing

19 Cal. Labor Code § 510(a).[2]

20    Plaintiffs allege, and defendant disputes, that PwC improperly

21

22    [1] Plaintiffs seek to certify a class under Federal Rule of
Civil Procedure 23(b)(3), which provides for an "opt out" class
23 action. See Anchem Products, Inc. v. Windsor, 521 U.S. 591, 614-15,
617 (1997).
24
25    [2] California law also requires, in general, that the employer
provide meal breaks, and that it not require employees to work
26 through meal or rest breaks mandated by the California Industrial
Welfare Commission.  See Cal. Labor Code §§ 226.7(a) & 512.

1    classified plaintiffs as "exempt" employees under California labor
2    laws.  This classification, if correct, would allow PwC to, among
3    other things, avoid paying plaintiffs overtime wages for overtime
4    work.  As relevant here, California Law exempts from the overtime
5    pay requirement, "administrative, and professional employees" whose
6    primary duties meet the test of the exemption, and who regularly
7    exercise "discretion and independent judgment" in performing those
8    duties.[3]  Harris, 53 Cal.4th at 178, citing Cal. Labor Code §
9    515(a).[4]

10        **A.   FACTUAL BACKGROUND**

11        Defendant PricewaterhouseCoopers LLP ("PwC") is a public
12   accountant firm employing over 30,000 people in its United States
13   offices.  See Campbell v. PricewaterhouseCoopers, LLP, 253 F.R.D.
14   586, 590 (E.D. Cal. 2008) (Karlton, J.).

15        PwC's organizational structure is complex and multi-tiered.
16   PwC's subdivision of its professional services begins with three
17   lines of service, which are Assurance, Tax, and Advisory.  See
18   Deposition of Michael F. Schini ("Schini Depo.") at 10:11-13 (Exh.
19   1 to Declaration of Peter A. Muhic, ECF No. 322-1) Only the
20   Assurance line is at issue in this motion.  Within the Assurance
21   ////
22   ////

23   ————————————————
24        [3] The law also exempts "executive" employees. However,
     defendant does not assert that exemption.

25        [4] The court notes that under California law, "exemptions from
26   statutory mandatory overtime provisions are narrowly construed."
     Ramirez v. Yosemite Water Co., Inc., 20 Cal.4th 785, 794 (1999).

1  line, only the audit function is at issue.[5]

2      An audit, for these purposes, is a function provided by PwC

3  for its audit (or Attest) clients in which PwC provides "an

4  expression of an opinion on a client's financial statements and,

5  in some cases, their internal controls over financial reporting."

6  Schini Depo at 36:4-9.

7      There are several personnel job titles within PwC.  These

8  include, in increasing level of authority, Associate, Senior

9  Associate, Manager, Senior Manager, Director, Managing Director,

10 and Partner.  See Schini Depo. at pp.30-31.  The named plaintiffs

11 in this action worked as Associates and/or Senior Associates in the

12 Assurance, Advisory or Tax lines of service.  See Second Amended

13 Consolidated Class/Collective Action Complaint ("Complaint"), ECF

14 No. 214 ¶¶ 33-46.

15     The present class certification motion, however, only involves

16 unlicensed (that is non-CPA) Senior Associates employed to work on

17 audits in the Attest division of the Assurance line of service in

18 PwC's California offices.[6]  See Motion To Certify at p.1 (ECF p.

19 8).  Named plaintiffs Samuel Brandon Kress and Jesse Kenny were

20 such Senior Associates during the class period.[7]  See Complaint ¶¶

21 _____

22     [5] It appears that the Assurance line is further divided into
   the "Attest," "Systems Process Assurance" and "Transaction"
23 divisions, and that the audit function is performed by the Attest
   division.

24     [6] Within PwC, the terms "attest" and "audit" are used
   interchangeably.  See Schini Depo. at 29:9-11.
25

26     [7] Antoine Powell was a named plaintiff who was also such a
   Senior Associate during the class period.  Powell has withdrawn

4

1    33 & 41; Answer (ECF No. 32)[8] ¶¶ 37 & 41.  Some Senior Associates

2    are hired directly into that position from outside PwC.  Schini

3    Depo. at 102:7-9.  However, the majority of PwC's Senior Associates

4    started as Associates and were promoted into the Senior Associate

5    position.  Id., at 103:2-5.

6         PwC uniformly classifies its Senior Associates as

7    administrative and/or professional employees and therefore exempt

8    from California's labor laws.  Id., at 170-71.  Senior Associates

9    regularly work overtime hours, but PwC does not pay them overtime

10   wages.[9]   In addition, PwC does not formally provide its Senior

11   Associates with the meal and rest breaks that would be required if

12   they were not exempt employees.[10]

13        **B.   Potential Class Representatives - Kress and Kenny.**

14        Named plaintiffs Kress and Kenny were hired by PwC as

15   Associates, and were later promoted to the Senior Associate

16   position.  See Deposition of Samuel Brandon Kress at pp. 20-21

17   (Associate from September 2002 to 2005; promoted to Associate in

18   2005); Deposition of Kenny at pp. 259-60 (worked as Associate in

19   San Diego office; moved to Los Angeles office when promoted to

20   _____

21   from the lawsuit.  See ECF No. 275.

22        [8]  This is PwC's Answer to Plaintiffs' Consolidated
     Class/Collective Action Complaint, which is deemed to be the Answer
23   to the current Complaint.  See ECF No. 198.

24        [9]  See, e.g., Declaration of Claudia Bonilla (ECF No. 322-3)
     ¶ 18 (Exh. 3 of the Declaration of Peter A. Muhic).  The Muhic
25   declaration is ECF No. 322.

26        [10] See, e.g., Declaration of Melissa Tucker, (ECF No. 322-6)
     ¶ 19 (Exh. 6 of the Muhic Decl.).

1  Senior Associate).[11]  PwC hired Kress as an Associate in September
2  2002.  Kress Depo. at 21-22.  In 2005, Kress was promoted to Senior
3  Associate.  Id.  He left PwC in December 2006.  Id.  PwC hired
4  Kenny as an Associate, also.  Kenny Depo. at 41-42.  Kenny was
5  promoted to Senior Associate in or about September 2005.  Kenny
6  Dep. at 50-51.  She left PwC shortly after passing the CPA exam.
7  Kenny Dep. at 202-03.

8  **II.   STANDARDS**

9  **A.   Class Certification - Allocation of Burdens.**

10  Plaintiffs, as the proponents of the motion seeking class
11  certification, have the initial burden "of affirmatively
12  demonstrating that the class meets the requirements of Federal Rule
13  of Civil Procedure 23."  Mazza v. American Honda Motor Co., Inc.,
14  666 F.3d 581, 588 (9th Cir. 2012); United Steel Workers v.
15  ConocoPhillips Co., 593 F.3d 802, 807 (9th Cir. 2010) ("The party
16  seeking class certification bears the burden of demonstrating that
17  the requirements of Rules 23(a) and (b) are met").

18  **B.   Class Certification - Rule 23(a).**

19  Class certification is proper only "if the trial court is
20  satisfied, after a rigorous analysis, that the prerequisites of
21  Rule 23(a) have been satisfied."  General Telephone Co. of
22  Southwest v. Falcon, 457 U.S. 147, 161 (1982).  Rule 23(a)
23  provides:

24  _____

25      [11]  Plaintiff submitted both depositions to the court, and
   served them on defendant, by email when they submitted their Motion
26  To Certify, pursuant to Local R. 133(j).

6

> One or more members of a class may sue or be sued as
> representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members
> is impracticable ["numerosity"];(2) there are questions
> of law or fact common to the class ["commonality"]; (3)
> the claims or defenses of the representative parties are
> typical of the claims or defenses of the class
> ["typicality"]; and (4) the representative parties will
> fairly and adequately protect the interests of the class
> ["adequacy" (of representation)].

Fed. R. Civ. P. 23(a).

The court must be satisfied that plaintiffs have "affirmatively demonstrate[d]" that "there are in fact sufficiently numerous parties, common questions of law or fact, etc." Wal-Mart Stores, Inc. V. Dukes, 564 U.S. ___, 131 S. Ct. 2541, 2551-52 (2011). The present context is a lawsuit alleging mis-classification of employees as exempt under California law. Thus, plaintiffs bear the burden of showing that the mis-classification "'was the rule rather than the exception.'" Marlo v. United Parcel Service, Inc., 639 F.3d 942, 947 (9th Cir. 2011), quoting Marlo v. United Parcel Service, Inc., 251 F.R.D. 476, 482 (C.D. Cal. 2008).

**C.   Class Certification - Rule 23(b).**

In addition, class certification is proper only if "at least one of the requirements of Rule 23(b)" is satisfied. Ellis v. Costco Wholesale Corp., 657 F.3d 970, 979-80 (9th Cir. 2011). One of those requirements provides as follows:

> A class action may be maintained if Rule 23(a) is
> satisfied and if: ... [1] the court finds that the
> questions of law or fact common to class members
> predominate over any questions affecting only individual
> members, and [2] that a class action is superior to
> other available methods for fairly and efficiently
> adjudicating the controversy.

7

1   Fed. R. Civ. P. 23(b)(3).

2       The Rule 23(b)(3) predominance inquiry asks whether the
3   proposed classes "are sufficiently cohesive to warrant adjudication
4   by representation.  The focus is on the relationship between the
5   common and individual issues."  <u>Mevorah v. Wells Fargo Home</u>
6   <u>Mortgage (In re Wells Fargo Home Mortg. Overtime Pay Litigation</u>),
7   571 F.3d 953, 957 (9th Cir. 2009) (citations and internal quotation
8   marks omitted).[12]

9   **III. ANALYSIS - RULE 23(a)**

10      **A.   Numerosity.**

11      To satisfy the "numerosity" requirement of Rule 23(a)(1),
12   plaintiffs must show that "the class is so numerous that joinder
13   of all members is impracticable." <u>See</u> Fed. R. Civ. P. 23(a)(1).
14   Pursuant to this rate, an attempt to join all parties need only be
15   difficult or inconvenient, it need not be "impossible." <u>Harris v.</u>
16   <u>Palm Springs Alpine Estates, Inc.</u>, 329 F.2d 909, 913–14 (9th Cir.
17   1964).  Although impracticability does not hinge only on the number
18   of members in the putative class, joinder is usually impracticable
19   if a class is "large in numbers." <u>See</u> <u>Jordan v. Los Angeles</u>
20   <u>County</u>, 669 F.2d 1311, 1319 (9th Cir. 1982), <u>vacated on other</u>
21   <u>grounds</u>, 459 U.S. 810 (1982).

22      Here, plaintiffs contend that they anticipate a class
23   numbering 315 persons.  Motion To Certify at p.18, citing the

24   _____

25      [12] <u>Quoting</u> <u>Local Joint Executive Bd. of Culinary/Bartender</u>
    <u>Trust Fund v. Las Vegas Sands, Inc.</u>, 244 F.3d 1152, 1162 (9th Cir.
    2001) and <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1022 (9th Cir.
26   1998).

1  Schini Depo. at 191:14-21.  While there is no set number of members
2  required, courts have found classes numbering in excess of one
3  hundred to be sufficient to satisfy the numerosity requirement.
4  See, e.g., Gay v. Waiters' & Dairy Lunchmen's Union, Local No. 30,
5  549 F.2d 1330, 1332-34 (9th Cir. 1977) (reversing district court's
6  finding that 184 potential members is insufficient to fulfill Rule
7  23(a)(1)'s requirements); see also, Int'l Molders & Allied Workers'
8  Local 164 v. Nelson, 102 F.R.D. 457, 461 (N.D. Cal. 1983) (456
9  class members satisfies numerosity).

10      Defendant does not dispute that the numerosity requirement is
11  met.  The court therefore finds that plaintiffs have satisfied the
12  numerosity requirement.

13      **B.   Commonality.**

14      To satisfy the "commonality" requirement of Rule 23(a)(2),
15  plaintiffs must show that "that there are one or more questions of
16  law or fact common to the class."  Costco, 657 F.3d at 980, citing
17  Fed. R. Civ. P. 23(a)(2).  Rule 23(a)(2) does not require that
18  every question of fact or law be common or identical.  Hanlon v.
19  Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  To the
20  contrary, "for purposes of Rule 23(a)(2) even a single [common]
21  question will do."   Wal-Mart, 131 S. Ct. at 2556 (internal
22  quotation marks omitted).

23      In this case, it appears to be undisputed that the class
24  members are California employees who work overtime hours, but are
25  not granted overtime pay or formal meal breaks.  Therefore, at
26  least two dispositive common questions plainly present themselves:

9

1  (1) are the class members entitled to overtime pay for overtime

2  work pursuant to California labor laws; and (2) are the class

3  members entitled to formal meal breaks under those laws?

4      <u>Wal-Mart</u> emphasizes, however, that the common question or

5  questions identified, must be such as "'to generate common <u>answers</u>

6  apt to drive the resolution of the litigation.'"  <u>Id.</u>, at 2551.[13]

7  PwC argues that <u>Wal-Mart</u> precludes a finding of commonality here

8  because its affirmative defenses make common <u>answers</u> impossible.

9  Specifically, PwC asserts that the plaintiff class is exempt from

10  California's labor laws – and therefore not entitled to overtime

11  pay or formal meal breaks – because they are "administrative"

12  employees, and because they are "professional" employees as defined

13  by California's labor laws.[14]  PwC further argues that the court

14  will have to delve deeply into the specific work done by each

15  employee, on a week-by-week basis in order to determine whether the

16  specific employee fits the claimed exemptions.  The court

17  accordingly turns to those affirmative defenses.

18         **1.   Learned Profession Exemption.**

19      The first exemption defendant claims is the "learned

20  

21      [13]  <u>Quoting</u> Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U.L. Rev. 97, 131–132 (2009).  Thus, the

22  plaintiffs' burden is not as simple as identifying any trivial common question, such as "were the class members all employees of

23  PwC during the class period?"  Nor is it as difficult as having to show that there are droves of issues common to the class, since

24  just one will do.

25      [14]  Defendant's Opposition makes no reference to the "executive" employee exemption.  Also, the court notes that PwC

26  does not concede that it actually denies meal breaks to the class members.

profession" exemption.  To prevail on the merits of this defense,
defendant will have to show that a Senior Associate is a person
primarily engaged in:

> Work requiring knowledge of an advanced type in a field
> [of] science or learning customarily acquired by a
> prolonged course of specialized intellectual instruction
> and study, as distinguished from a general academic
> education and from an apprenticeship ... [and]

> Who customarily and regularly exercises discretion and
> independent judgment in the performance of duties set
> forth in subparagraphs (a) and (b).

Cal. Code Regs. tit. 8 § 11040(1)(A)(3)(b).[15]

As a threshold showing on the merits, defendant will have to
show that the Senior Associate position "requires advanced
knowledge customarily acquired by a prolonged course of specialized
intellectual instruction."  Solis v. Washington, 656 F.3d 1079,
1081 (9th Cir. 2011).  The referenced "instruction" must be
"sufficiently specialized" and "relate directly to the position."
Id., at 1088-89.  Indeed, "[t]he phrase 'customarily acquired by
a prolonged course of specialized intellectual instruction'
restricts the exemption to professions where specialized academic
training is a standard prerequisite for entrance into the
profession."  Id., at 1084 (emphasis added).[16]

---

[15] Another qualification for the "professional" employee
exemption is if the employee is a "licensed" professional, a CPA
in this case.  However, the class definition excludes any licensed
professionals.  Moreover, a license is not required to fit this
exemption, so long as the above requirements are met. See Campbell
v. PricewaterhouseCoopers, LLC, 642 F.3d 820 (9th Cir. 2011).

[16] Both parties accept the federal law and regulations, and
the Ninth Circuit interpretation thereof of, as at least providing
relevant guidance to this court in construing the state law and

1    It is apparent, then, that this exemption presents a common

2 question: does acceptance or promotion into the Senior Associate

3 position require, as a standard prerequisite, advanced knowledge

4 customarily acquired by a prolonged course of specialized academic

5 instruction?  It is also apparent on its face that this exemption

6 is susceptible to common proof.  One simple example of common proof

7 here would be the resumes of Senior Associates.  That evidence

8 would tend to show whether or not Senior Associates have the

9 supposedly required academic training.  Another example of common

10 proof is the testimony of hiring managers or documents showing the

11 requirements for being hired or promoted into the Senior Associate

12 position, to establish whether or not the academic credentials are

13 a standard prerequisite for the hiring or promotion of a Senior

14 Associate.

15    To meet their initial burden for certification purposes,

16 plaintiffs have established that Senior Associates are most

17 commonly promoted into that position after having been PwC

18 Associates.  See Schini Depo. at 103:2-5.  This court has already

19 held that the prolonged study requirement is not required of

20 Associates, the pool from which Senior Associates are promoted.

21 See Campbell v. PricewaterhouseCoopers LLC, Case No. 2:06-cv-2376

22 (E.D. Cal. November 29, 2012) (Karlton, J.).[17]   Accordingly, if

23 

24 regulations.  Moreover, some Federal regulations are expressly
incorporated into the state's law regarding these exemptions.  See
25 Cal. Admin. Code tit. 8 § 11040 (1)(A)(2)(F) (administrative
exemption) & 11040 (1)(A)(3)(e) (professional exemption).

26    [17] 2012 WL 5989377, 2012 U.S. Dist. LEXIS 169957.

1   the prolonged study requirement applies to Senior Associates, it

2   must be imposed after their hire as Associates. However,

3   plaintiffs have directed the court's attention to a PwC document

4   that appears to set forth the requirements for promotion from

5   Associate to Senior Associate, and which does not seem to include

6   any prolonged academic study requirement.   Muhic Decl. Exh. 2 at

7   PwC-LE014637 (ECF No. 322-2  p.7).

8       Accordingly, plaintiffs have met their burden to show that

9   there is common proof establishing that defendant will not be able

10  to invoke the "learned profession" exemption.   However, defendant

11  can still defeat the class certification motion if it can

12  demonstrate that certification is not appropriate for its

13  affirmative defense that plaintiffs are exempt as "administrative

14  employees."

15              **2.   Administrative Exemption.**

16      Defendant next asserts that plaintiffs are exempt

17  "administrative" employees. That exemption applies to an employee:

18          (a) ... [w]hose duties and responsibilities involve ...
            [t]he performance of office ... work directly related to
19          management policies or general business operations of
            his/her employer or his employer's customers; and
20
            (b) Who customarily and regularly exercises discretion
21          and independent judgment; and ...

22          (d) Who performs under only general supervision work
            along specialized or technical lines requiring special
23          training, experience, or knowledge; ... and

24          (f) Who is primarily engaged in duties that meet the
            test of the exemption.
25

26  Cal. Code Regs. tit. 8, § 11040(1)(A)(2).

                            13

1    Plaintiffs bear the burden of establishing that they can
2    present common proof on this exemption.  They assert that they can
3    meet their burden by establishing that no Senior Associate is
4    permitted – by the laws, professional rules and PwC policies
5    governing auditor independence – to engage in work "directly
6    related to management policies or general business operations" of
7    PwC's clients.  Further, they assert that they can produce common
8    proof to show that Senior Associates are not "primarily engaged"
9    in such work for PwC itself, and that in any event Senior
10   Associates do not regularly exercise discretion and independent
11   judgment.

12   In order to qualify for the administrative employee exemption,
13   the Senior Associate's work must be "directly related to management
14   policies or general business operations" of PwC or its clients.
15   The California Supreme Court recently clarified what this means:

16       Work qualifies as "directly related" if it satisfies two
         components.   First,  it  must  be   qualitatively
17       administrative.  Second, quantitatively, it must be of
         substantial importance to the management or operations
18       of the business.   Both components must be satisfied
         before work can be considered "directly related" to
19       management policies or general business operations in
         order to meet the test of the exemption.
20
         The  regulation  goes  on  to  further  explicate  both
21       components.  Federal Regulations former part 541.205(b)
         discusses the qualitative requirement that the work must
22       be  administrative  in  nature.   It  explains  that
         administrative operations include work done by "white
23       collar" employees engaged in servicing a business.  Such
         servicing may include, as potentially relevant here,
24       advising  management,  planning,  negotiating,  and
         representing the company.
25

26   <u>Harris</u>, 53 Cal.4th at 181-82.  In addition, the Ninth Circuit has

1    stated:

2         The test is whether the activities are directly related
          to management policies or general business operations.
3         The district court correctly captured the essence of
          this requirement by interpreting it to mean "the running
4         of a business, and not merely ... the day-to-day
          carrying out of its affairs."

5

6    Bratt v. County of Los Angeles, 912 F.2d 1066, 1070 (9th Cir. 1990)

7    (interpreting 29 C.F.R. § 541.205(b)), cert. denied, 498 U.S. 1086

8    (1991).

9                      **(a)  Advising PwC's Clients.**

10        Both sides choose as their principal battleground, the

11   question of whether Senior Associates regularly "advise" PwC's

12   audit clients.  Plaintiffs argue on two fronts here.  First, they

13   assert that PwC itself is prohibited by independence rules from

14   advising its audit clients.  Second, they assert that California

15   law prohibits the Senior Associates from advising PwC's clients

16   because they are not licensed accountants.  Defendant responds

17   through declarations seeming to show that Senior Associates do

18   advise PwC's clients.

19                  **(i)  The Audit and Auditor Independence.**

20        An audit, for these purposes, is a function provided by PwC

21   for its audit (or Attest) clients in which PwC provides "an

22   expression of an opinion on a client's financial statements and,

23   in some cases, their internal controls over financial reporting."

24   Schini Depo at 36:4-9.[18]  A financial statement, in turn, is a

25   _____

26        [18] See also, Edenfield v. Fane, 507 U.S. 761, 769 (1993) ("a
     CPA reviews financial statements and attests that they have been

                                    15

1   report of the client's financial condition as of a specified date.

2   See Black's Law Dictionary ("financial statement").

3        In carrying out this work, PwC and indeed "[a]ll members of

4   the engagement team," must be "independent of the client, both in

5   fact and in appearance."  Schini Depo. at 84:12-20.  To qualify as

6   an "independent" public or certified accountant, PwC must maintain

7   "total independence from the client at all times."  See U.S. v.

8   Young & Co., 465 U.S. 805, 818 (1984).  The U.S. Securities &

9   Exchange Commission ("SEC"), with whom financial statements of

10  public companies are filed:

> will not recognize an accountant as independent, with
> respect to an audit client, if the accountant is not, or
> a reasonable investor with knowledge of all relevant
> facts and circumstances would conclude that the
> accountant is not, capable of exercising objective and
> impartial judgment on all issues encompassed within the
> accountant's engagement.

15  17 C.F.R. § 210.2-01(b) (emphasis added).

16       An accountant is not independent if its work with the audit

17  client places it "in the position of auditing his or her own work."

18  17 C.F.R. § 210.2-01 (preliminary notes to SEC regulations); AU §

19  220.03 (independent auditor cannot be a director of the audited

20  entity "since he would be in effect auditing decisions which he had

21  _____

22  prepared in accordance with generally accepted accounting
    principles and present a fair and accurate picture of the firm's
23  financial condition"); AICPA AU § 110 ("The objective of the
    ordinary audit of financial statements by the independent auditor
24  is the expression of an opinion on the fairness with which they
    present, in all material respects, financial position, results of
25  operations, and its cash flows in conformity with generally
    accepted accounting principles").  "AICPA AU" refers to American
26  Institute of Certified Public Accountants, Professional Standards.
    The parties agree that PwC is required to follow these standards.

1  a part in making"). Plaintiffs thus implicitly argue that PwC

2  cannot advise the audit client on any matter relating to the audit,

3  since if it did so, it would then be auditing his own work, rather

4  than the client's work. This description thus gives the impression

5  that the client's financial statements are essentially already

6  written by the time PwC receives them, and it is PwC's job to say

7  only, "we agree," or "we disagree."

8      The AICPA rules upon which plaintiffs rely however,

9  specifically permit an independent auditor to advise the audit

10 client on matters relating to the audit without surrendering its

11 independence.[19] Specifically:

> The independent auditor may make suggestions about the
> form or content of the financial statements or draft
> them, in whole or in part, based on information from
> management during the performance of the audit.

15 AU § 110.03 (emphasis added); see also AU § 380.38 ("[t]he auditor

16 should explain to those charged with governance why the auditor

17 considers a significant accounting practice not to be appropriate

18 and, when considered necessary, request changes") (emphasis added);

19 AU § 380.40 (auditor communicates misstatements to management, and

20 reports to those in the entity's governance structure those

21 misstatements which management does not correct).

22      In short, the auditor independence rules do not prohibit PwC

23

---

24      [19] Plaintiffs rely upon the AICPA rules, and do not assert
    that the rules are in conflict with any laws or other rules
25  addressing auditor independence. Accordingly, the court interprets
    the applicable AICPA rules without also attempting to determine
26  whether the state and federal laws and regulations conform.

1  from advising management on matters relating to the client's

2  financial statements, during the audit.  To the contrary, the rules

3  appear to permit the "independent" auditor to "draft" the financial

4  statements themselves, without surrendering its independence.

5                    **(ii) Senior Associates' Role.**

6       Plaintiffs next argue that Senior Associates cannot advise

7  PwC's clients on matters relating to the audit because they are

8  precluded from doing so by state law.  In fact, California law

9  provides that only a licenced accountant may engage in the

10 "practice of public accountancy."  Cal. Bus. & Prof. Code §

11 5050(a).

12      There is an exception to this exclusion, however.  A Senior

13 Associate – as an unlicensed accountant – is permitted to practice

14 accounting as "an employee of, or an assistant to" a CPA or public

15 accounting firm.  Cal. Bus. & Prof. Code § 5053.  This exception

16 itself however, has a limiting clause that prohibits the Senior

17 Associate from issuing "<u>any statement</u> over his or her name."  <u>Id.</u>

18 (emphasis added).

19      In sum, as the court reads the statutes, it appears that since

20 the proposed class includes only unlicensed accountants, no one in

21 the class may engage in the practice of public accountancy, except

22 as an employee of PwC or an assistant to a licensed CPA.  Even then

23 however, Senior Associates may not engage in that practice in their

24 own right, or in their own name, but only as employees or

25 assistants of PwC or a licensed CPA.

26      The defendant nevertheless has produced declarations which it

18

1  asserts shows that the Senior Associates are exempt – or at least

2  that individual inquiries are needed to determine this – because

3  they have: advised PwC's clients regarding on-going audits;

4  managed, staffed and budgeted for audits; and supervised other

5  unlicensed accountants working on audits.

6      For example, the Shackley Declaration (ECF No. 258-22),

7  asserts that Brian Shackley, as an unlicensed Senior Associate,

8  advised a public company client that, in his view, it had

9  improperly accounted for a certain "related lease-back agreement."

10  After getting the go-ahead from the Senior Manager on the

11  engagement, Shackley advised the public client of the

12  misclassification. Thereupon, according to Shackley, the public

13  client accepted Shackley's critique, and based upon that, the

14  public client re-classified the lease and included the re-

15  classified lease in its financial statement which was then "issued

16  to the SEC and the public." Shackley Decl. ¶ 25.[20]

17      The declaration is apparently submitted to show that Shackley

18  advised the audit client of his _own_ view – which his supervisor

19  agreed with – on how it should account for a particular item, and

20  that the client took _Shackley's_ advice by accounting for the item

21  as Shackley had advised.

22      The court, reading the declarations in light of the law (and

23

24      [20] Such a statement could not be filed with the SEC without an
opinion from an independent CPA. <u>See, e.g.</u>, 15 U.S.C. §§ 77g,
25  77aa(25)-27 (financial statements are required to be included in
securities registration statements, and they "shall be certified
26  by an independent public or certified accountant").

1  AICPA standards) governing the Senior Associates' behavior, does

2  not read the declaration so broadly. Indeed, reading the

3  declaration in light of the governing law, a different picture

4  emerges.

5       California law prohibits Shackley, as an unlicensed

6  accountant, from, on his own, holding himself out to the public "in

7  any manner as one skilled in the knowledge, science and practice

8  of accounting, and as qualified and ready to render professional

9  service therein as a public accountant for compensation." Cal.

10 Bus. & Prof. Code § 5051(a); Moore v. California State Bd. of

11 Accountancy, 2 Cal.4th 999, 1004 (1992) (listing activities that

12 may only be engaged in by licenced public accountants). Similarly,

13 an unlicensed accountant like Shackley cannot render "professional

14 services to clients for compensation in any or all matters relating

15 to accounting procedure and to the recording, presentation, or

16 certification of financial information or data." Cal. Bus. & Prof.

17 Code § 5051(e); Moore, 2 Cal.4th at 1004.

18      Even with the exception extended to employees of accounting

19 firms and assistants to CPA's, an unlicensed accountant still may

20 not hold himself out in this way in his own name. In other words,

21 it is not the unlicensed accountant – even if a PwC employee – who

22 can advise a client that in his own view, the client needs to

23 change his accounting procedures. However, nothing in the law

24 appears to prohibit that same employee from expressing the views

25 of PwC or of his CPA supervisor – presumably with the consent of

26 PwC or the supervisor – so long as it is clear that it is not his

1   own views that he is expressing, and not he who is recommending the

2   change in accounting procedures.

3        Accordingly, the court reads Shackley's declaration to mean

4   that, whatever important work Shackley contributed to the audit,

5   Shackley did not "advise" the client.  Rather, he passed along to

6   the client PwC's or his supervisor's advice and recommendation.

7   The court does not believe that relaying someone else's advice

8   counts as "advising" the client.  Accordingly, plaintiffs have met

9   their burden to show that through common proof - namely the

10  constraints placed on <u>all</u> Senior Associates by California law -

11  they can show that <u>no</u> Senior Associate advises PwC clients.[21]

12                 **(b)  Managing the audit.**

13       The other way plaintiffs can be exempt under the "directly

14  related" prong is if their work is directly related to the

15  management of PwC itself.  PwC asserts that Senior Associates

16  participated in the management of PwC by supervising others on

17  audits, and by planning, staffing and budgeting for the audit.

18       However, each of these activities, as they relate to audits,

19  is a part of the audit process, and is therefore committed to the

20  care of a licensed CPA, not left to be conducted by unlicensed

21  accountants.  <u>See, e.g.</u>, AU § 230.02 (requiring auditor to plan the

22  audit with due care); AU § 230.06 ("[t]he auditor with final

23  _____

24       [21] Plaintiffs also submit declarations in an attempt to show
     that Senior Associates do not advise clients.  The problem with
25   plaintiffs' showing, however, is that their declarations - of class
     plaintiffs - is not "common proof," in that it only shows, at best,
26   that these declarants never advised PwC's clients.

                              21

1  responsibility is responsible for the assignment of tasks to, and

2  supervision of, assistants"). Even the collection of audit

3  evidence – and the determination of what should be collected – is

4  a matter committed to the licenced CPA auditor, not an unlicensed

5  accountant. <u>See</u> AU § 230.08 & 230.11 (auditor must exercise

6  "professional skepticism" in gathering audit evidence).

7      PwC's declarations often contain sweeping statements about how

8  Senior Associates planned and staffed the audit,[22] supervised

9  others on the audit and generally managed the entire audit.[23]

10  However, when the sweeping declarations are examined in greater

11  detail, and in light of the governing standards, once again a

12  different picture emerges.

13      It appears that the supervising CPA or CPAs on the engagement,

14  not the unlicensed Senior Associate actually did the work committed

15  to the judgment of a licensed CPA: planning and staffing,

16  supervising and managing the audit. While the Senior Associates

17  may have taken the "first pass" at the audit plan, which presumably

18  included staffing, it was the licensed CPA who made the decision

19  to implement the plan, or made the decision on which audit plan

20  _____

21  [22] <u>See, e.g.</u>, Declaration of Ryan Adams ¶ 7, Exh. 2 to the Declaration of Julian W. Poon (ECF No. 258-2) ("I was responsible for ... planning and staffing the audit"); Declaration of Lauren McClelland ¶¶ 10-11, Exh. 14 to Poon Decl. (ECF No. 258-14) ("I assigned one of the Associates on the engagement the responsibility of developing and documenting the audit risks facing the company that year"); Decl. of Rashid ¶ 13, Exh. 20 to Poon Decl. (ECF No. 258-20) ("I also staff the engagement with Associates and sometimes Senior Associates as well").

25

26  [23] <u>See, e.g.</u>, Declaration of Ryan Adams ¶ 7, Exh. 2 to the Declaration of Julian W. Poon, ECF No. 258-2.

would be followed.[24]   The court does not intend here to underplay the role played by the Senior Associates; they were not the automatons plaintiffs portray in their papers.[25]   However, most of the declarations, read in light of the restrictions on the work of unlicensed accountants, make clear that the Senior Associates "assisted" the licensed CPA's in these endeavors.[26]

**IV.   ANALYSIS - PREDOMINANCE**

Defendant argues that individual issues predominate over any

---

[24] <u>See, e.g.</u>, Botta Decl. ¶ 8 ("As a Senior Associate at PwC, I would usually complete the first draft of the audit plan for my engagements"); Devlin Decl. ¶ 19 ("In my experience, Senior Associates take the first pass at almost all audit planning"); Peters Decl. ¶¶ 8-9 ("After I completed my draft of the ASM [Audit Strategy Memo], the Manager reviewed it and provided feedback"); Piziali Decl. ¶ 8 ("On all of the engagements that I was assigned to, I would complete a first draft of the audit plan and then work with the Manager and Partner to finalize it").

[25] Indeed, nothing in this order is intended to diminish the importance, difficulty or even creativity of the assistance they provided.  However, to the degree PwC is arguing that an informal practice has developed in which unlicensed Senior Associates performed work that it was illegal for them to perform (by state law and AICPA rules), the court does not see how that work can be the basis for arguing that the employees were therefore exempt from state labor laws.

[26] <u>See, e.g.</u>, Adams Decl. ¶¶ 8-11 (Senior Associate performed an impressive amount of work on planning the audit, which was then "reviewed and approved" by the "Manager and Partner on the engagement").

To the degree an unlicensed accountant can be seen as actually doing the planning, staffing, budgeting and supervising of an external audit – especially of a public client whose financial statements will be filed with the SEC – the court believes that under the law and AICPA rules, he or she must be working under the close supervision of their supervising CPA's.  In that case, the "administrative" exemption does not apply because only those working under only "general supervision" are exempt.  <u>See</u> Cal. Code Regs. tit. 8, § 11040(1)(A)(2)(d).

common contentions.   It does not argue that it is illegally
withholding overtime pay from some employees while properly
withholding it from others.  However, it does argue that in order
to show how it is properly withholding overtime pay (and other
benefits) from all Senior Associates, it must be able to show as
to each individual employee how that employee is exempt.
Accordingly, defendant believes it is entitled to require that
individual lawsuits be brought by individual Senior Associates.[27]

Specifically, defendant argues that neither exemption can be
determined without examining the actual work performed by each
Senior Associate on a week-by-week basis.   This type of
examination, it argues would defeat any showing of predominance.

The court disagrees with defendant's premise.  As discussed
above, plaintiffs have made a sufficient showing that the class of
unlicensed Senior Associates cannot be engaged in the work PwC says
would exempt them from California's labor laws.   Thus, until

_____

[27] Of course that would seemingly discourage any individual
Senior Associate from asserting their rights through a lawsuit:

> The policy at the very core of the class action
> mechanism is to overcome the problem that small
> recoveries do not provide the incentive for any
> individual to bring a solo action prosecuting his or her
> rights.  A class action solves this problem by
> aggregating the relatively paltry potential recoveries
> into something worth someone's (usually an attorney's)
> labor.

Amchem, 521 U.S. at 617, quoting Mace v. Van Ru Credit Corp., 109
F.3d 338, 344 (1997).  However, defendant is correct that this
policy cannot be used to deprive it of the right to a meaningful
defense.

1  defendant can show that all class members are required to have the

2  threshold  academic  background  required  for  the  "professional"

3  exemption, there is no need, on this motion, to examine what work

4  they actually do on an employee-by-employee, week-by-week basis.

5  Further, until defendant shows that unlicensed accountants are

6  permitted to do the things California law and AICPA rules say they

7  cannot do, there is no need to conduct the requested point-by-point

8  examination of their actual work.

9      In  light  of  the  foregoing,  the  court  also  finds  that

10 proceeding with this case as a class action is superior to other

11 methods of trying this case.

12 **V.   CONCLUSION**

13      For the foregoing reasons, the motion to certify the class of

14 Senior Associates is **GRANTED.**

15      IT IS SO ORDERED.

16      DATED: January 10, 2013.

19      LAWRENCE K. KARLTON

20      SENIOR JUDGE

21      UNITED STATES DISTRICT COURT

25